# Case No. 14,787.

UNITED STATES v. CHASE et al.

[25 Int. Rev. Rec. 161.]

District Court, D. Massachusetts. May 26, 1879.[1]

CUSTOMS DUTIES—PROTEST—ACTION TO RECOVER BALANCE.

1. Act June 30, 1864, § 14, Rev. St. § 2931 [13 Stat. 209], making the decision of the collector of customs of the port where merchandise is entered final and conclusive as to the rate and amount of duties on such merchandise unless the importer pays the amount claimed, and duly protests, appeals, and brings suit for its recovery, applies not only in cases where such collector errs in judgment as to the proper rate and amount of such duties, but also where there are informalities and irregularities on the part of the customs officers respecting the appraisal of such merchandise, such as would enable the importer to recover his money back if he had duly protested, appealed, and brought suit therefor.

2. In this case it appeared that the collector did not designate on the invoice the requisite number of sample bales for examination, nor did the appraisers make proper examination of the merchandise in question, and the said merchandise was in fact erroneously classified to the prejudice of the importer; but the appraiser made a certificate of appraisal in due form, and the collector made final liquidation of the duties on the basis of the appraiser's report, and the importer, having already paid the estimated duties, refused to pay the balance demanded. *Held*, that in a suit by the government against the importer to recover such balance, the importer could take advantage of none of the above facts in his defence.

This was an action of debt to recover a balance of duties alleged to be due on certain manufactures of jute, most of which are commonly known as "double warp bagging" or "Dundee bagging," imported into the port of Boston from Liverpool at various dates in 1870. The invoices showed that the merchandise in question was a manufacture of jute valued at over ten cents per square yard.

It appeared in evidence that from the time of the passage of the act, similar merchandise had paid a duty of 35 per cent. ad valorem under the provisions of Act June 30, 1864, § 7, cl. 1 (13 Stat. 209); and at the time of the entry of the goods, duties were estimated on that basis, and paid by the defendants [Henry S. Chase and others], and the merchandise delivered to the importers. On each invoice the collector designated certain packages for examination, but on none of them did he so designate one package in ten, nor in any case was one package in ten sent to the appraiser's store for examination. In but one of the importations was any package sent to the appraiser's store which contained double warp bagging, and the sample packages in every instance were in a few days thereafter sent to the importers, and all the goods were speedily sold. There was no evidence of actual examination of any of these goods by the appraisers in person, but the testimony tended to show that the assistant appraiser made some examination; and upon the invoices he reported as had previously been done in respect to double warp bagging, that the merchandise was a manufacture of jute under 30 cents per square yard, and dutiable at 35 per cent. ad valorem. He then handed the invoices with his report thereon to the appraiser for final action.

The appraiser appeared to have delayed final action for several months, and testified that he, before such action, ascertained that double warp bagging was then extensively in use for cotton bagging; and being satisfied it had theretofore been wrongly classified, he made appraisement and report as to double warp bagging as follows directly under the report of the assistant appraiser: "Manufacture of jute suitable for the uses to which cotton bagging is applied exceeding 10 cents per square yard, change from 35 per cent. to 4 cents per pound;" thus reporting the merchandise as being dutiable under clause third of the section above named. The appraiser at the same time made certain additions to the invoiced and entered value of other merchandise import-

[1] [Affirmed in 9 Fed. 882.]

ed with the double warp bagging. These certificates of the appraiser appeared to have been made without any examination of the goods by him, and without reference to examination by his assistant, and long after the sample packages had left the custom house, and all the goods had been sold and gone into consumption. The invoices with the above certificates were thereupon sent to the collector's department, and notice of the above advances in values was sent the importers on May 17, 1871. No appeal was taken to merchant appraisers. A few days later, the final liquidation of the several entries above named based on the appraiser's report was made by the collector, and notice thereof was duly posted and special notice thereof sent the importers on the same day. They denied the right of the collector to impose these additional duties, but made no formal protest or appeal; and the said suit was brought to recover a balance of $1,403.67, alleged to be due on the double warp bagging whereof the classification was changed as above stated, and a balance of $180.35 on the merchandise whereon the value had been advanced by the appraiser.

It was not denied on the part of the government that the appraiser was in error in classifying the double warp bagging as being suitable for the uses to which cotton bagging was applied, and that the collector was in fault in neglecting to designate on the invoice for examination one package in ten of each importation, and that neither the appraiser nor his assistant in fact had made such examination of the merchandise as the law requires in order to render an appraisement value; but it was claimed that the collector's decision as to the rate and amount of duties was final under section 14 of the said act, and that the defendants had neglected to take advantage of their only legal remedy for these errors and irregularities since they had not paid the amount claimed, and duly protested, appealed, and brought suit against the collector for its recovery.

The defendants contended that there had been no legal decision of the collector in this case; that the collector had no jurisdiction of the question until there had been an appraisement, and that there not only had been none in this case, but that the collector could but know it, since he had failed to specify on the invoice the sample packages requisite to make a valid appraisement possible; and that his decision therefore was wholly void.

It was replied in behalf of the government that the statute on its face gave the collector jurisdiction to determine the rate and amount of duty, provided there was an entry of merchandise through the custom house of which he was in charge, and that on the entry of merchandise he could determine the rate and amount of duty without any appraisal, and the remedy of the importer would be by protest and appeal and bringing of suit, or possibly by an action for damages against the collector; but that if an appraisal was necessary in order to give the collector jurisdiction, the appraiser's certificate in due form (like an officer's return on a writ) was such evidence to the collector of an appraisal as to give him jurisdiction; that the cases of U. S. v. Frazer [Case No. 15,161], in the United States district court for the Southern district of New York, and U. S. v. Rodocanachi [unreported], in the circuit court of the United States for the district of Massachusetts, cited by the defendants, were not applicable to the state of facts in this case, since in both these cases the collector had undertaken to revise a final decision and liquidation already duly made; that if the decision of the collector was absolutely void where there had been no valid appraisal, it would not be necessary to set out the irregularities complained of in a protest even in suits against the collector, whereas the cases of Burgess v. Converse [Id. 2,154], s. c., 18 How. [59 U. S.] 413, and Schmaire v. Maxwell [Case No. 12,460], expressly held that such informalities as were here complained of could only be taken advantage of where properly set out in such protest.

After the evidence was all in, it appeared that there was no dispute as to the facts, but that the only question was the question of law, whether the collector in this case had decided the rate and amount of duty within the meaning of section 14 above referred to.

P. Cummings, Asst. U. S. Atty.
C. L. Woodbury, for defendants.

NELSON, District Judge, thereupon said in substance that he had given the matter careful consideration in order to see if any valid defence existed against the government claim, since it appeared that the collector had in the final liquidation assessed a heavier duty on the merchandise imported than was imposed by the law properly construed. That the cases of Westray v. U. S., 18 Wall. [85 U. S.] 322, and U. S. v. Cousinery [Case No. 14,878], which both parties to this controversy conceded to be law, were to the effect that the decision of the collector was final where the appraiser and collector had made errors of judgment in determining the rate and amount of duties on imports, and where all the proceedings were regular in form; but that in this case there were irregularities in the mode of procedure of those officers as well as an error of judgment, yet that the provision of law making the decision of the collector final unless there be due protest, appeal, and bringing of suit, was intended to apply also to informalities and irregularities such as were here complained of; that it was

the misfortune of the defendants that they had failed to avail themselves of the statute remedy thus provided, but that in this action they were without defence; and he instructed the jury to find for the United States in the whole amount claimed with interest.

The jury returned a verdict for the plaintiff for $2,318.02.

[Upon a writ of error the circuit court affirmed the judgment. 9 Fed. 882.]