GUY B. BARHAM Co., ETC. *v.* UNITED STATES (No. 4568)[1]

---

[1] C. A. D. 385.

United States Court of Customs and Patent Appeals, January 27, 1948

*Lawrence, Tuttle & Harper* (*Walter I. Carpeneti, Lawrence A. Harper,* and *George R. Tuttle* of counsel) for appellants.

*Paul P. Rao,* Assistant Attorney General (*Sybil Phillips,* special attorney, of counsel), for the United States.

[Oral argument December 2, 1947, by Mr. George R. Tuttle and Miss Phillips]

Before GARRETT, Presiding Judge, and HATFIELD, JACKSON, and O'CONNELL, Associate Judges

O'Connell, Judge, delivered the opinion of the court:

This is an appeal from a judgment rendered in two cases involving protests which were consolidated for trial and heard together by the United States Customs Court, Third Division. The protests grew out of the action of the Collector of Customs at the port of Los Angeles, Calif., C. D. 1029, in reliquidating an entry of stemmed filler tobacco imported from Cuba. One of the protests, 107734–K, which claimed that the reliquidation was null and void was dismissed by the trial court as untimely; the other, 108281–K was overruled. Both are hereinafter explained in detail.

There is no controversy of consequence concerning the facts.

The tobacco was entered for warehouse September 21, 1942. It was withdrawn for consumption four days later, that is, on September 25, 1942. The collector assessed duty at the rate of 20 cents per pound under paragraph 601 of the Tariff Act of 1930 as modified by the supplemental Cuban Trade Agreement of December 23, 1939, T. D. 50050, 75 Treas. Dec. 224.

The supplementary Cuban Trade Agreement contained a quota limitation expressed in a proviso, as follows:

NOTE: Filler tobacco, not specially provided for, unstemmed or stemmed (other than cigarette leaf tobacco), and scrap tobacco, the growth, produce or manufacture of the Republic of Cuba, entered, or withdrawn from warehouse, for consumption in excess of a total quantity (unstemmed equivalent) of 22,000,000 pounds in any calendar year after 1939, shall be subject to duty as though such articles were not enumerated and described in this Schedule, but the rates of duty thereon shall not exceed those in effect on August 24, 1934.   *  *  *

It appears that at the time the importer withdrew the tobacco from the warehouse, the Cuban quota had been exhausted but this seems not to have been then known to the Collector of Customs (or to the deputy collector who in fact attended to the transaction) at the Los Angeles port.

There is no claim that the importer had any knowledge of the quota having been exhausted and no challenge of his statement made in a

letter or petition hereinafter set forth that "had he known it would not come under the quota, he would not have withdrawn it [from warehouse] at that time."

The assessment of duty at the 20 cent per pound rate was made and paid, the entry being liquidated on the basis of that rate on November 28, 1942.

On April 10, 1943, more than 6 months after the tobacco had been withdrawn from the warehouse and more than 4 months after the liquidation, the collector's office at Los Angeles seems to have learned for the first time that the Cuban quota for the calendar year 1942 had been exhausted at the time the tobacco was withdrawn from warehouse, and the deputy collector in charge of the Liquidation Division, disregarding the liquidation of November 28, 1942, made what he designated as a reliquidation in which duty was assessed at 40 cents per pound, and payment by the importer at that rate was demanded, the additional amount demanded expressed in dollars and cents being $5,434.80.

The information with respect to the Cuban quota being exhausted apparently was contained in a C. I. E. (Customs Information Exchange) letter, dated September 21, 1942, which those in the collector's office at Los Angeles appear to have overlooked. At any rate the deputy collector in charge of the matter testified that "through an oversight, our office was not aware of the fact that the quota had been consumed * * *," and also that, "It [the error in the office] consisted of overlooking, I believe, of a C. I. E. circular letter advising us of the fact that the quota had been consumed."

"Customs Information Exchange" letters are not documents open to the public but are circulated between customs officers only. So, the importer was not chargeable with any constructive notice as to the status of the Cuban quota.

At the trial it was stipulated by counsel for the respective parties, *inter alia*, that "no fraud was disclosed or has ever been suspected; that no protest was pending or had ever been filed during the interval between the original liquidation and the reliquidation." This stipulation removed any possibility of section 521 of the act relating to fraud having been applicable.

In disregarding the liquidation of November 28, 1942, and attempting to reliquidate the entry the deputy collector, of course, disregarded also the provision of section 514 of the Tariff Act of 1930 which makes liquidation final "upon all persons (including the United States and any officer thereof)" unless a protest is filed within 60 days after the liquidation.

When counsel for appellant asked the deputy collector, what warrant of law he had for "such a reliquidation," the latter responded:

The reason for the reliquidation was that at the time of the liquidation, through an oversight, our office was not aware of the fact that the quota had been con-

sumed, that is, under ihe Cuban Trade Agreement, and therefore the rate would be 40 cents a pound instead of 20 cents a pound, and upon that basis it was the belief of the Liquidating Division, or the Collector's office, that there had been a change in the law. What I mean by that is that the quota had been filled on the 20-cent basis and because of the trade agreement the correct rate of duty was 40 cents a pound.

Just why the liquidation division of the collector's office concluded that overlooking an important official document by those in the office wrought a change in a law of Congress is a mystery which the witness did not explain and we shall not endeavor to explain it.

The attempted reliquidation was void *ab initio*, and, as hereinafter related, it was so declared by the Commissioner of Customs when the matter reached him.

If there be nothing involved in the case except what appears in the record before us, the importer had a valid and effective defense against any action which might have been brought against it or brought upon its bond, assuming that it had one on file with the collector. Indeed it is difficult to conceive of the Government bringing suit under the state of facts here existing. So, appellant by merely doing nothing might have been relieved of payment of the amount.

Another remedy open to the importer was that of filing a timely protest against the reliquidation.

Neither of the suggested courses was pursued, however, and the question is whether it may have relief under the course it did pursue.

On July 7, 1943, it addressed a letter to the *"Collector of Customs,"* Washington, D. C. (Italics ours). The text of the letter indicates that it was intended as a petition to the Commissioner of Customs, and that idea is strengthened by a letter hereinafter quoted addressed on the same date to the collector of customs, Los Angeles, California.

We quote the text of the petition-letter in full:

Sir:

> Warehouse Bond 752–9/21/42
> Warehouse Withdrawal 970–9/25/42
> A/c A. Sensenbrenner Sons [1]

We respectfully refer you to demand No. 661022 for $5,434.80 increased duty on the above cited Warehouse Entry, and enclose herewith check No. 8607 of A. Sensenbrenner Sons [1] payable to Collector of Customs Los Angeles, with the request that this check be *held in a special deposit until you consider the following facts in this case:* [Italics quoted.]

September 25, 1942 we presented a warehouse withdrawal for consumption covering 180 packs stemmed filler tobacco, at 20¢ per pound; this entry was accepted and duty paid at this rate and the tobacco was withdrawn from warehouse.

November 28, 1942 Warehouse Entry 752 was liquidated AS ENTERED and the importer so notified. [Capitals quoted.]

---

[1] The "name" A. Sensenbrenner Sons appears in this letter and in that addressed to the collector at Los Angeles but nowhere else in the record except the title page. It is assumed to be a brokerage firm which acted in some capacity for the importer. Otherwise it would not seem to be a proper party in this action.

April 10, 1943 (nearly five months later) the entry was reliquidated and demand issued for an additional $5,434.80.

(a) The Entry Division erred in accepting this entry on 9/25/42 at 20¢ per pound, as they were in possession of Bureau Circular No. 2350 dated Sept 21, 1942 reading:

"During the period September 24 to December 31, 1942, estimated duties at the rates of duty in effect on August 24, 1934, on such tobacco shall be required to be deposited on all entries or withdrawals for consumption pending determination as to the particular entries coming within the quota. This determination will be made by the Bureau as soon as possible after receipt of completed quota reports from Collectors and Comptrollers of Customs for the period in which the quota is filled."

(b) The Liquidating Division erred in liquidating the entry November 28, 1942 at 20¢ per pound, as they also had Bureau Circular No. 2350 dated Sept. 21, 1942, referred to above.

(c) Neither the broker, nor the importer was advised of the receipt of Circular 2350 dated Sept. 21, 1942, and the entry was presented in good faith, and accepted by the Collector's office at 20¢ per pound and liquidated November 28, 1942 AS ENTERED.

Therefore, we respectfully petition your favorable consideration, and ask that the Collector of Customs be instructed to cancel demand 661022 for increased duties in view of these mitigating circumstances, as if the importer (at this late date) is required to pay this increased duty, it will work a very grave hardship on him.

Very truly yours,
GUY B. BARHAM COMPANY
M. L. Usher, Mgr.

The point is the importer thought this withdrawal was within the quota; had he known it would not come under the quota, he would not have withdrawn it at that time.

The text of the letter addressed on the same day to "Collector of Customs, Los Angeles, California", reads:

Sir:

Warehouse Entry 752 9/21/42
Warehouse Withdrawal 970–9/25/42
A/c A. Sensenbrenner Sons

We enclose herewith in duplicate a petition [the communication of appellant hereinbefore quoted] to the Commissioner of Customs, Washington, D. C., for relief in the matter of demand No. 661022 for $5,434.80 increased duty on the above numbered entry and withdrawal.

Will you please forward this petition to the Commissioner of Customs as early as convenient, together with such facts as you deem pertinent to the case.

Thanking you, we are,

Very truly yours,
GUY B. BARHAM COMPANY
M. L. Usher, Mgr.

A letter from the Collector of Customs (by the assistant collector) at Los Angeles to the importer under date of January 19, 1944 (more than 6 months after importer's letters to the commissioner and the Los Angeles collector) indicates that the so-called petition was for-

warded to the Commissioner of Customs, but apparently the check for $5,434.80 was covered into the Treasury by the collector at the Los Angeles port. The text of the letter from the Los Angeles customs collector reads:

Reference is made to your letter of July 7, 1943 addressed to the Commissioner of Customs in which you petitioned for cancellation of the demand for increased duties No. 661022 made in connection with Warehouse Withdrawal No. 970, dated September 25, 1942 on Warehouse Bond 752, dated September 21, 1942 for the account of A. Sensenbrenner Sons.

A check for $5,434.80 was submitted with the above described letter which requested that it be held in a special deposit until the Commissioner considered the case. Inasmuch as the amount represented increased duties it was covered into the Treasury in accordance with the provisions of Section 512 of the Tariff Act of 1930.

This office is in receipt of a communication from the Bureau advising that although the reliquidation was void as a matter of law, in the absence of a timely protest against such reliquidation, there is no basis for correcting the error by a re-reliquidation, and cited the case of Boera Bros. v. United States, T. D. 46712.

In the meantime the importer, on August 9, 1943, (which was 4 months lacking a day after the void reliquidation, and 1 month and 2 days after its petition to the commissioner at Washington and its letter to the collector at Los Angeles) filed protest 107734–K with the collector at Los Angeles.

The relevant portions of the protest as filed on that date read:

Protest is hereby made against your * * * decision assessing, imposing or collecting * * * fees, or other exactions * * * in connection with the entries or other matters referred to below. The reasons for objection under the Tariff Act of 1930 * * * are as follows:

Your purported reliquidation is null and void as the same is more than 60 days from date of liquidation. There was no fraud involved and, therefore, the liquidation is final. * * *

At the beginning of the trial and before the taking of testimony began, counsel for importer moved to amend the protest by adding the following:

The reliquidation being illegal and void the Collector's decision to accept the check for $5,434.80 under the purported authority of the illegal reliquidation and/or his decision under the same purported authority to convert it (at that time or subsequently) into payment increased duties constituted an illegal exaction under Sections 512 and 520 of the Tariff Act of 1930.

Counsel for the Government objected to the amendment in "that the matter sought to be inserted into the protest is matter which does not properly belong in the protest and is not covered by the original protest."

Decision of the question was reserved until the final disposition of the case. The trial court then sustained the Government's motion to dismiss the protest saying:

This protest is clearly untimely. It is directed against the collector's reliquidation of April 10, 1943, and was not filed until August 9, 1943. It is therefore not

within the statutory 60-day period provided in section 514 of the Tariff Act of 1930. It should be and is hereby dismissed. The protest being untimely, the motion to amend is denied.

Appellant's second protest, 108281–K was filed January 26, 1944, some 7 days after the date of the letter hereinabove quoted from the Los Angeles collector to appellant. It reads in part:

Protest is hereby made against * * * your decision assessing, imposing or collecting * * * fees, or other exactions * * * in connection with the entries or other matters referred to below. The reasons for objection under the tariff act of 1930 * * * are as follows:

Protest is hereby made against the failure of the Collector to keep the sum of $5434.80, representing increased duties on the entry cited below, in a special deposit account as requested by the importer.

This protest is also directed against the Collector's refusal to refund the sum of $5434.80.

Counsel for appellant moved before the beginning of the taking of testimony to amend protest 108281–K also by inserting the following:

The check for $5434.80 entrusted to the Collector of Customs in response to his unwarranted demand for that amount under a void reliquidation, should have been held in special deposit in accordance with the terms of the tender and should not have been paid into the United States Treasury under Section 512 of the Tariff Act of 1930. As ruled by the Commissioner of Customs the reliquidation was void. Consequently, no duties could have been due under it and the special deposit should be returned. Protest is accordingly filed under Section 514 of said Act against the decision in the Collector of Customs' letter of January 19, 1944, not to return the said special deposit of $5434.80.

Counsel for the Government made the same objection to the amendment that was made in the case of protest 107734–K, *supra*, and again argument and decision was reserved until the final trial and decision of the case. The Government moved to dismiss this protest also, but the trial court held that it was timely filed and also held the amendment, by which the claims were made more specific, to be pertinent, and granted same.

Notwithstanding its timeliness, however, the trial court overruled the protest as amended, saying *inter alia*

* * * The gist of the amendment is that the reliquidation being void, no duties could have been due thereunder. In order to obtain a decision on the merits as to that issue, protest should have been filed within the statutory time after the reliquidation. Instead of adopting that course, plaintiff elected to apply to the Commissioner of Customs for relief. The collector's action in refusing to refund the sum in question, in the absence of protest against the reliquidation, without a showing of fraud or clerical error, is in conformity with the law (secs. 514 and 520, Tariff Act of 1930). Plaintiff's contention, as set forth in the brief filed, that this sum is an exaction is clearly untenable. Even if the collector's demand for the sum of $5434.80 were an exaction (although we do not so hold), a protest against the same should have been filed within 60 days after the demand, under said section 514.

The trial court held that the claim of the protest that the check for $5,434.80 entrusted to the collector should have been held in a special deposit and not covered into the Treasury was untenable in view of the provisions of section 512 of the Tariff Act of 1930, reading:

All moneys paid to any collector for unascertained duties or for duties paid under protest against the rate or amount of duties charged shall be deposited to the credit of the Treasurer of the United States and shall not be held by the collectors to await any ascertainment of duties or the result of any litigation in relation to the rate or amount of duties legally chargeable and collectible in any case where money is so paid.

We agree with the trial court that the collector was without authority to place the money in a special deposit account, but we are inclined to the view that, upon the facts here appearing, section 512 is not applicable and the check should have been returned to the importer and not deposited to the credit of the Treasury of the United States. Appellant did not propose to pay it to the collector for unascertained duties, nor for duties paid under protest. Appellant did not owe the Government anything on this transaction at the time he mailed the check to the collector, and the collector was charged with knowledge of that fact when he covered the amount into the Treasury. The Government had not even the shadow of a legal claim against appellant. All that it had was a reliquidation concededly void *ab initio*.

Appellant did not offer to pay any duties additional to those he paid under the first and legal liquidation, and the statement in the collector's letter of January 19, that "the amount represented increased duties" is not accurate. It represented what were claimed as duties but which were based upon the void—not voidable but absolutely void—act of a Government official who covered into the Treasury money sent not to pay any obligation indicated by section 512, *supra*, but to be held, appellant hoped, until the proper governmental authority could consider a state of facts which showed that the Government had no valid claim against it. The authority did act and it agreed with appellant that the reliquidation was void as a matter of law, but held, so far as dollars and cents are concerned, that this availed him nothing "in the absence of a timely protest."

It seems to us that the withholding of the funds which the appellant entrusted to the collector constituted an illegal exaction and that appellant was and is within its right in protesting.

We agree with the trial court that protest 108281–K filed January 26, 1944, 7 days after the collector's letter of January 19, 1944, refusing to pay back the $5,434.80 delivered to the collector's office upon a condition which the office disregarded without, so far as the record shows, even advising appellant that it had done so, until 6 months had elapsed, was timely and valid and that the amendment was properly allowed.

We are of the opinion, wholly independent of section 512, *supra*, that it was not any part of the collector's duty to place and keep the funds represented by the check sent him in a special deposit, but we do not think section 512 is applicable under the state of facts here shown, or that it became the collector's duty to deposit it to the credit of the Treasury of the United States. Under such circumstances the check should have been returned to appellant. Since it was not, and since the protest both as originally filed and as amended was specifically directed against the collector's refusal to refund or return the $5,434.80, we disagree with the trial court's action in overruling protest 108281–K. It should have been sustained and refund of the amount ordered.

Our action on protest 108281–K being decisive of the issue, it is unnecessary to consider the assignment of errors relating to protest 107734–K.

For the reasons indicated the judgment of the trial court is *reversed* and the cause is *remanded* for further proceedings in conformity with this decision.