The UNITED STATES,
Plaintiff–Appellee,

v.

CHERRY HILL TEXTILES,
INC., Defendant,

and

International Cargo and Surety
Insurance Company, De-
fendant–Appellant.

No. 96–1097.

United States Court of Appeals,
Federal Circuit.

May 5, 1997.

2. Administrative Law and Procedure
⊙=229

Wayne Jarvis, Hodes & Pilon, Chicago, IL, argued, for defendant-appellant. With him on the brief were Michael G. Hodes and James L. Sawyer.

Barbara Silver Williams, Commercial Litigation Branch, Civil Division, Department of Justice, International Trade Field Office, New York City, argued, for plaintiff-appellee. With her on the brief were Frank W. Hunger, Assistant Attorney General, and David M. Cohen, Director, Washington, D.C., and Joseph I. Liebman, Attorney in Charge, International Trade Field Office. Of counsel on the brief was Ted Kundrat, Office of Assistant Chief Counsel, United States Customs Service, Indianapolis, IN.

Before LOURIE, CLEVENGER, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

This case requires us to construe 19 U.S.C. § 1514, which provides that, with certain narrowly defined exceptions, the Customs Service's liquidation of an entry is "final and conclusive" as to all parties unless an administrative protest is filed challenging the liquidation. International Cargo & Surety Insurance Co. (IC & S), the surety for importer Cherry Hill Textiles, Inc. (Cherry Hill), argues that the protest requirement of section 1514 applies to actions brought by importers or sureties for the refund of duties paid, but does not apply to enforcement actions brought by the government to collect underpayments of duties. For that reason, IC & S contends that it should be allowed to challenge the liquidation at issue in this government enforcement action, even though it did not file a timely protest of the liquidation with the Customs Service. The Court of International Trade rejected that argument, and so do we.

We agree, however, with IC & S's less sweeping contention that it was not required to file a protest in the particular circumstances of this case, i.e., when Customs purported to liquidate the entry after it had already been liquidated by operation of law. The trial court therefore should not have granted summary judgment in favor of the government on the ground that IC & S's failure to protest the second liquidation of the entry barred it from challenging that liquidation.

I

Cherry Hill was the importer of record of textile dyeing machines from Taiwan that were entered as duty free through the Port of Newark, New Jersey, on September 18, 1987. After a delay of more than 13 months from the date of entry, Customs on October 28, 1988, liquidated the entry as dutiable in the amount of $12,220.62. The government gave notice of the liquidation to Cherry Hill and subsequently demanded payment from Cherry Hill's surety, appellant IC & S, under the surety bond. IC & S refused to make the payment. It did not, however, file a formal protest under 19 U.S.C. § 1514 of either the liquidation or the demand for payment.

After the passage of the 90–day period within which a protest could be filed, the government filed an enforcement action in the Court of International Trade seeking recovery of the claimed $12,220.62 in assessed duties. IC & S interposed several defenses to the enforcement action. The government then moved for summary judgment, contending that IC & S's failure to file a protest against either the liquidation or the demand for payment under the bond rendered the October 28, 1988, liquidation "final and conclusive" within the meaning of 19 U.S.C. § 1514 and therefore precluded judicial review of IC & S's affirmative defenses to the liquidation. In response, IC & S argued that the provision of section 1514 that makes unprotested liquidations "final and conclusive" applies to actions brought by importers or sureties to recover excess duty deposits, but not to government enforcement actions for unpaid duties. The court rejected that argument and granted summary judgment to the government for the full amount of its claim for duties, plus interest. IC & S then perfected an appeal to this court.

## II

Section 514 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1514, plays a central role in the system for adjudicating rights under the Customs laws. With certain specified exceptions, it requires that an administrative protest be filed if an importer or surety wishes to challenge the Customs Service's liquidation of a particular entry, and it provides that if such a protest is not filed, the Customs Service's decision, "including the legality of all orders and findings entering into the same ... shall be final and conclusive." 19 U.S.C. § 1514(a). It is undisputed that an administrative protest must be filed if an importer or surety wishes to file suit in the Court of International Trade challenging the liquidation of a Customs entry. The principal issue in this case is whether an importer or surety must file such an administrative protest if the importer or surety wishes to defend against a government enforcement action for the underpayment of duties by challenging the lawfulness of the liquidation.

### A

■ IC & S argues that section 1514 is the product of history, and so it is. We therefore turn to the history of section 1514 for guidance as to its proper construction. While IC & S claims that there is no historical support for applying the protest requirement of section 1514 in the context of government enforcement actions, our study of the historical materials leads us to the opposite conclusion; indeed, we find that the historical materials provide compelling evidence that the Court of International Trade reached the correct conclusion on that issue. Moreover, while there is no binding judicial authority on this point, the court decisions that touch on the issue support the conclusion reached by the Court of International Trade.

The first tariff statutes contained no mechanism for importers to challenge excessive duty charges. *See* Act of July 4, 1789, ch. 2, 1 Stat. 24; Act of July 31, 1789, ch. 5, 1 Stat. 29; Act of Aug. 4, 1790, ch. 35, 1 Stat. 145; Act of Mar. 2, 1799, ch. 22, 1 Stat. 627. For years, therefore, an importer who objected to a duty as excessive had to pay the duty and then sue the customs collector for a refund in a common law court. As that practice developed, the courts required the importer to give notice of the claim for a refund at the time the duties were paid so that the collector could retain the duties in order to be able to refund them in the event of an adverse court ruling. *See Elliott v. Swartwout*, 35 U.S. (10 Pet.) 137, 153, 9 L.Ed. 373 (1836). In 1845, Congress codified the protest requirement by requiring, as a prerequisite to a refund suit against the collector, that the importer submit a protest in writing at the time of paying the duties. Act of Feb. 26, 1845, ch. 22, 5 Stat. 727; *see Nichols v. United States*, 74 U.S. (7 Wall.) 122, 126–27, 19 L.Ed. 125 (1868).

The "final and conclusive" clause that is at the heart of this case first appeared in section 14 of the Tariff Act of 1864, ch. 171, 13 Stat. 202, 214–15, which is a direct predecessor of the current section 1514. The 1864 statute provided that on the entry of any goods, the decision of the collector of customs as to the rate and amount of duties to be paid would become "final and conclusive against all persons interested therein" unless the importer or other interested party gave notice in writing of its dissatisfaction with the collector's decision within 10 days, followed by an appeal to the Secretary of the Treasury and a suit in court against the collector.

IC & S argues that this background demonstrates that the protest requirement originated and was intended to apply only as a condition to a suit brought by an importer or other interested party to recover overpayments of duties, and that it was not meant to foreclose any party from defending against a claim for additional duties brought by the United States. While it is true that the legislation does not refer to enforcement suits brought by the United States, a number of cases decided shortly after the enactment of the 1864 Act applied the "final and conclusive" clause to government enforcement actions. *See, e.g., Westray v. United States*, 85 U.S. (18 Wall.) 322, 329–30, 21 L.Ed. 763 (1873); *United States v. Schlesinger*, 14 F. 682, 685 (C.C.D.Mass.1882), *aff'd*, 120 U.S. 109, 7 S.Ct. 442, 30 L.Ed. 607 (1887); *Chase v. United States*, 9 F. 882, 883 (C.C.D.Mass.

1882), *aff'g United States v. Chase,* 25 F. Cas. 410, 411–12 (D.Mass.1879) (No. 14,787); *United States v. Phelps,* 27 F. Cas. 521, 522–23 (C.C.S.D.N.Y.1879) (No. 16,039), *aff'd,* 107 U.S. 320, 2 S.Ct. 389, 27 L.Ed. 505 (1883); *Watt v. United States,* 29 F. Cas. 441, 442 (C.C.S.D.N.Y.1878) (No. 17,292); *United States v. Cobb,* 11 F. 76, 79 (C.C.Mass.1882); *United States v. McDowell,* 21 F. 563, 565–66 (S.D.N.Y.1884); *United States v. Earnshaw,* 12 F. 283, 285–86 (S.D.N.Y.1882); *United States v. Campbell,* 10 F. 816, 819 (S.D.N.Y. 1882); *United States v. Comarota,* 2 F. 145, 146–47 (S.D.N.Y.1880); *United States v. Sowers,* 27 F. Cas. 1276, 1277 (E.D.Pa.1879) (No. 16,363); *United States v. Cousinery,* 25 F. Cas. 677, 677–78 (S.D.N.Y.1874) (No. 14,878).

In many of those cases, the courts explicitly addressed the question whether the "final and conclusive" clause was applicable in the context of enforcement actions, and they uniformly held that it was. In the *Cousinery* case, for example, Judge (later, Justice) Blatchford analyzed in detail and rejected precisely the claim that IC & S is now making, a century and a quarter later:

> It is contended, for the defendants, that [section 14 of the 1864 Act] has relation only to duties which have been paid; that its sole object is to regulate suits to recover back such duties after they have been paid; that it has no application to a suit by the United States to recover unpaid duties.... But this view ignores the actual structure of the section and the plain meaning of its language. It enacts that the decision of the collector shall be final and conclusive against all persons interested therein, unless the notice of dissatisfaction is given and the appeal is taken.... This entirely excludes from consideration in a suit brought by the United States to enforce payment of the duties, all questions as to whether the decision of the collector or that of the secretary was correct.

25 F. Cas. at 678.

Chief Justice Waite, sitting in the circuit court in the *Watt* case, conducted essentially the same analysis and reached the same conclusion:

> The language of the statute is clear and explicit, to the effect, that the decision of the collector shall be final and conclusive against all persons interested, as to the rate and amount of duties to be paid, unless the appeal is taken. No room is left for construction. The provision is not that no suit shall be maintained to recover back money paid under the decision, until the appeal is taken and acted upon, or the specified time for such action has elapsed, but that the decision itself shall be final and conclusive against all persons interested, upon the questions necessarily decided.

29 F. Cas. at 443.

By the end of the 1880s, as demonstrated by the unbroken line of court decisions cited above, it was well established that the "final and conclusive" clause of section 14 of the 1864 Act applied both to suits brought by private parties seeking refunds of duty overpayments and to government enforcement actions brought to recover underpayments of duties.

In 1890, Congress again revised the tariff statutes. As part of the overhaul, Congress gave importers a right to judicial review of their refund requests in the circuit court, rather than through an action against the collector of customs. In Section 14 of the new statute, however, Congress preserved the protest requirement and the "final and conclusive" clause in language similar in all material respects to that found in section 14 of the 1864 Act. *See* Act of June 10, 1890, ch. 407, 26 Stat. 131, 137–38. The courts construing the 1890 statute again uniformly held that the protest requirement and the "final and conclusive" clause applied not only to refund requests by importers, but also to government enforcement actions against importers for the collection of duties. *See, e.g., United States v. Mexican Int'l R.R. Co.,* 151 F. 545, 548 (5th Cir.1907); *United States v. Tiffany & Co.,* 151 F. 473, 474 (2d Cir.1906); *Louisville Pillow Co. v. United States,* 144 F. 386, 388 (6th Cir.1906); *Gandolfi v. United States,* 74 F. 549, 550 (2d Cir.1896); *United States v. Strauss,* 55 F. 388, 390 (S.D.Ohio 1893).

In its briefs, IC & S ignores this entire line of authority. Instead, IC & S relies on the Supreme Court's subsequent decision in *United States v. Sherman & Sons Co.*, 237 U.S. 146, 35 S.Ct. 520, 59 L.Ed. 883 (1915), as its basis for arguing that under section 14 of the 1890 Act, as amended in 1909, the "final and conclusive" clause did not apply to government enforcement actions. But the *Sherman* case does not stand for that broad proposition, as a close examination of the decision reveals.

Section 14 of the 1890 Act, as amended, provided that after the passage of one year, absent fraud and absent a protest by the importer, a decision of the collector of customs as to the rate and amount of duties owed on imported goods would become final and conclusive on all parties. *Sherman* presented the Supreme Court with the question whether a customs collector could make a determination of fraud and then reliquidate an entry more than one year after the original liquidation, and whether an importer who failed to file a timely protest of the reliquidation could challenge the reliquidation in a subsequent government enforcement action. *See* 237 U.S. at 149–50, 35 S.Ct. at 521–22.

After noting the general principle that a protest must be filed in order to challenge any liquidation or reliquidation, 237 U.S. at 151–52, 35 S.Ct. at 522–23, the Supreme Court held that principle inapplicable to the two actions before it. The Court explained that while the customs laws made an unprotested liquidation final and conclusive, Congress did not "authorize the Collector to make findings of fraud" and compel the importer to defend against the fraud determination through the protest mechanism. *Id.* at 155, 35 S.Ct. at 523–24. Instead, the Court held, a charge of fraud must be proved in court, and not simply through the administrative process. *Id.* at 157, 35 S.Ct. at 524–25. For that reason, the Court concluded, an importer who is subjected to a reliquidation based on a charge of fraud is not relegated to the protest and appeal mechanism, but may challenge the finding of fraud in a government enforcement action brought in court even if the importer filed no protest of the reliquidation. *See id.* at 158, 35 S.Ct. at 525.

In the first of the two actions under review in *Sherman,* the customs collector had not specifically alleged fraud in his complaint, although the reliquidation was made more than a year after the original liquidation (and thus the action would be sustainable only if based on a showing of fraud). Although the Court did not discuss the first action separately, it answered the certified question pertaining to that action by stating that the importer was "not concluded by the reliquidation order" and was entitled to defend against a government enforcement action based on the liquidation "even though he did not file a protest and make the payment required in the case of the original liquidation." 237 U.S. at 158, 35 S.Ct. at 525.

*Sherman* thus stands for two propositions. First, the Court held that in the case of a reliquidation based on a charge of fraud, the government must allege and prove fraud in court, and the collector's finding of fraud would not be conclusive even if the importer failed to protest the liquidation. Second, the Court held that, even absent a protest, an importer could defend against an enforcement action based on a reliquidation made after the expiration of the one-year statutory period for reliquidations, regardless of whether fraud was specifically alleged as the basis for the reliquidation. *Sherman* does not, however, stand for the much broader proposition that IC & S tries to draw from it, *i.e.,* that the protest requirement does not apply to any government enforcement actions.

Any doubt as to the limited reach of the Court's ruling in *Sherman* is dispelled by an examination of the briefs in that case. The government's brief asserted as a basic premise of its argument that the protest requirement is generally applicable to actions brought by the government. Appellant's Brief at 14, *United States v. Sherman & Sons Co.*, 237 U.S. 146, 35 S.Ct. 520, 59 L.Ed. 883 (1915) (No. 541). The importer did not vigorously contest that general proposition. Instead, after briefly noting that there was "some conflict of authority" as to whether the protest requirement applied to government actions, the importer turned to the main issue in the case, which was whether the

"final and conclusive" clause barred the importer from contesting the government's allegations of fraud, raised years after the initial liquidation. Appellee's Brief at 20, *United States v. Sherman & Sons Co.*, 237 U.S. 146, 35 S.Ct. 520, 59 L.Ed. 883 (1915) (No. 541). Moreover, the importer cited only a single case, *United States v. Schlesinger*, 120 U.S. 109, 7 S.Ct. 442, 30 L.Ed. 607 (1887), for the proposition that there was "some conflict of authority" as to the applicability of the protest requirement to government enforcement actions. *Schlesinger*, however, was a case in which the importer filed a protest but was barred by a then-applicable provision of the statute from further pursuing the protest by filing a lawsuit challenging the liquidation; it did not suggest that importers could routinely bypass the protest requirement but still raise their defenses in government enforcement actions. The briefs in *Sherman* thus confirm that the Court was not being asked to decide the broad question that IC & S considers to have been resolved by the Court in that case.

Since *Sherman*, the question whether the protest requirement of section 14 of the 1890 Act (or its direct successor, section 514 of the Tariff Act of 1930) applies in government enforcement actions has not been the subject of many judicial decisions, but those cases that have addressed the question have uniformly treated the protest requirement as applicable to government enforcement actions. *See A.S. Rosenthal Co. v. United States*, 24 F.2d 351, 352 (2d Cir.1928); *United States v. Desiree Int'l U.S.A., Ltd.*, 497 F.Supp. 264, 266 (S.D.N.Y.1980); *United States v. Ataka Am., Inc.*, 826 F.Supp. 495, 503 (CIT 1993).

The historical background of section 1514 is thus not at all as painted by IC & S. In its briefs and argument, IC & S characterizes the predecessors of section 1514 as directed solely at establishing an administrative prerequisite for a refund suit against the government, and it attacks the government's position in this case as an effort to extend the statute to a context for which it was never designed. Our examination of the historical materials, however, leads us to the contrary conclusion. As indicated above, by the time of the Tariff Act of 1930, it was well established that the exhaustion requirement applied both to refund suits by importers and to enforcement actions by the government. We therefore reject IC & S's contention that the decision of the trial court in this case flies in the face of more than a century of congressional action and judicial practice under section 1514 and its predecessors.

B

Although this court has not specifically addressed the point pressed by IC & S, two of this court's decisions, *United States v. Utex International, Inc.*, 857 F.2d 1408 (Fed. Cir.1988), and *St. Paul Fire & Marine Insurance Co. v. United States*, 959 F.2d 960 (Fed.Cir.1992), bear on the question. IC & S claims that each of those decisions buttresses its argument here, but in fact neither decision supports IC & S.

In *Utex*, this court addressed the question whether, in an action for liquidated damages brought by the government, the importer or its surety was required to file a protest and pay the demanded damages in order to preserve the right to defend on the issue of liability. In that context, the court held, a protest was not necessary. While so holding, however, the court indicated no doubt that a protest would have been required if the question before it had been whether the importer or its surety could challenge the validity of a liquidation in an enforcement action. The *Utex* court explained that "[t]he cases cited by the government referring to the finality of assessment absent a timely protest all refer to duties and related exactions subsumed in final liquidation." 857 F.2d at 1414. With respect to that situation, the court stated that it "entirely agree[d] ... that both sides of this action are now barred from challenging the liquidation." *Id.* Thus, had the issue in the *Utex* enforcement action been the accuracy or validity of a liquidation, the court presumably would have barred Utex from challenging the liquidation because of its failure to file an administrative protest. *See United States v. Toshoku Am., Inc.*, 879 F.2d 815, 818 (Fed.Cir.1989) (confirming that the court in *Utex* held a protest unnecessary only because the case involved a claim for liqui-

dated damages based on the importer's alleged non-compliance with the conditions of its bond); *United States v. Ataka Am., Inc.,* 826 F.Supp. at 502–03 (same). For that reason, the quoted language from *Utex,* while not strictly part of the court's holding, is nonetheless squarely at odds with IC & S's principal contention in this case.

In *St. Paul,* the other decision of this court relied on by IC & S, a surety filed a timely protest of a liquidation and filed suit in the Court of International Trade to contest the liquidation. The surety subsequently learned that Customs was investigating the surety's principal for fraud. The surety then sought to amend its complaint to request nullification of its bond on the ground that the government had breached its duties to the surety by failing to inform the surety of the ongoing fraud investigation of the importer and by failing to demand the deposit of full duties by the importer at the time of entry. The government argued that the complaint could not be amended, because the surety had not filed a timely protest presenting the issues that it sought to raise in its amended complaint. The court rejected that argument and held that the surety's contractual defenses at issue in that case could be raised without the need for a protest, regardless of whether the liquidation had been otherwise protested. 959 F.2d at 964. The decision in *St. Paul,* however, does not stand for the much broader proposition that an unprotested liquidation is not final for purposes of a government enforcement action, nor for the equally sweeping proposition that a surety is not bound by unprotested liquidations. It is fair to say, then, that nothing in any of the case law that IC & S has cited to us, or that we have discovered, supports IC & S's contention that the protest requirement of section 1514 does not apply in the context of government enforcement actions. To the contrary, the case law, though sparse in recent years, uniformly supports the position taken by the government on the broad question of the applicability of section 1514 to suits brought by the government.

C

Just as the case law has been consistent on this point, there has been no recent change in the text of the tariff statutes or other indication from Congress signaling an intention to depart from the principle established under the 1864 and 1890 Acts—that the protest requirement applies both to suits brought by importers and to enforcement actions brought by the government. The only direct reference to that issue in any of the legislative materials that the parties have called to our attention is found in the legislative history of the Customs Courts Act of 1980, Pub.L. 96–417, 94 Stat. 1727. The House Committee that reported on that legislation explained that it did "not intend for importers to withhold payment of their assessed duties and then await suit by the Government in order to challenge the underlying administrative decision by the Customs official as to classification or valuation through the use of a counterclaim pursuant to proposed section 1583 [which gave the Court of International Trade jurisdiction over counterclaims, cross-claims, and third-party actions in cases otherwise properly before the court]." H.R.Rep. No. 96–1235, at 49 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3729, 3760.

Seizing on the reference to "counterclaims," IC & S argues that the language in the House report was intended only to bar the use of counterclaims to assert claims that were not properly raised through the protest mechanism. In fact, however, the excerpt from the House report indicates that the committee considered the exhaustion of administrative remedies to be a normal prerequisite to challenging a liquidation, even in a government enforcement action, and that the committee wanted to ensure that the new provision allowing parties to raise counterclaims in actions before the Court of International Trade would not be used as a vehicle for sidestepping the traditional protest requirement. *See also Customs Courts Act of 1980: Hearings on H.R. 6394 Before the Subcomm. on Monopolies and Commercial Law of the House Comm. on the Judiciary,* 96th Cong. 221 (1980) (statement of the Association of the Customs Bar suggesting that under the new statute an importer should be allowed to "defend a collection suit on the

merits, *provided he had exhausted his administrative remedies.*") (emphasis added).

■ IC & S argues that section 1514 was designed as an exhaustion of administrative remedies provision and that such provisions do no more than bar the party that has not exhausted its remedies from seeking relief in court. An exhaustion requirement, according to IC & S, does not have the further effect of barring the non-exhausting party from defending against an action brought by the government. While exhaustion requirements often have the effect that IC & S describes, that is not uniformly the case, as the effect of any exhaustion requirement is dictated by the language of the particular statute in which that requirement resides.

Language nearly identical to that in section 1514 is contained in the Wunderlich Act, 41 U.S.C. § 321, which provides that a contracting officer's decision "shall be final and conclusive" except in certain limited circumstances. Contractors in cases arising under that statute have argued that the "final and conclusive" language was limited to barring private parties from seeking affirmative relief and did not have the effect of foreclosing defenses in enforcement actions brought by the government. The courts, however, have rejected that argument, holding that the term "final and conclusive" in the statute must be interpreted to bar challenges to the decision in question whether raised in an affirmative suit or through a defense in an enforcement action. *See, e.g., United States v. Ulvedal,* 372 F.2d 31, 34–35 (8th Cir.1967) (Blackmun, J.); *United States v. Hammer Contracting Corp.,* 331 F.2d 173, 176 (2d Cir.1964) (Marshall, J.), *aff'g* 216 F.Supp. 948 (E.D.N.Y.1963).

The issue of the effect of the "final and conclusive" clause is thus simply one of statutory construction. The language of section 1514, that a liquidation will be "final and conclusive" unless protested, is sufficiently broad that it indicates that Congress meant to foreclose unprotested issues from being raised in any context, not simply to impose a prerequisite to bringing suit. Moreover, we discern no compelling policy consideration counseling against giving the statutory language its naturally broad reading. To the contrary, under IC & S's position importers or sureties could bypass the protest mechanism in any case in which an underpayment of duties is alleged, and then collaterally challenge the liquidation in the ensuing enforcement action. To give importers and sureties that option would create a gaping hole in the administrative exhaustion requirement of section 1514 and would be inconsistent with the underlying policy of section 1514, which is to channel challenges to liquidations through the protest mechanism in the first instance. *See United States v. A.N. Deringer, Inc.,* 66 C.C.P.A. 50, 593 F.2d 1015, 1021 (1979).

■ Likewise, there is no force to IC & S's claim that the decision of the Court of International Trade deprives an importer or surety of its statutory right to a trial in the Court of International Trade "upon the basis of the record made before the court" in collection actions brought by the government. 28 U.S.C. § 2640(a)(6). Under the 1980 Customs Courts Act, an importer or surety in a collection action is entitled to a trial *de novo*, just as it would have been in a district court before 1980. As we have discussed, however, an importer's or surety's right to a trial *de novo* in a district court in a collection case before 1980 was subject to the protest requirement of section 1514, and the same principle simply carried over to the Court of International Trade. The right to a trial *de novo* on the basis of a record made before the court does not give a party the right to litigate issues that the party has previously waived by failing to comply with statutory procedural requirements. Thus, to apply the protest requirement to all challenges to liquidations does not result in a denial of the right to trial in the collection action if the importer or surety has not filed a timely protest; it merely limits the scope of the issues that can be contested at such a trial. Other issues remain open for trial, as was made clear in the *Utex* and *St. Paul* cases. But the issue of the correctness and validity of the liquidation is "final and conclusive" for purposes of the collection action when the liquidation has not been protested in accordance with the provisions of section 1514. We therefore reject IC & S's principal

contention on this appeal—that the protest requirement of section 1514 has no role to play in an enforcement action brought by the government.

### III

■ That does not, however, end this case. At the end of its brief, IC & S raises a second, narrower ground for reversal. Referring to the defenses it asserted in the trial court, IC & S argues that summary judgment should not have been granted in favor of the government, because the entry at issue in this case was "deemed liquidated" by operation of law when the Customs Service failed to liquidate it within one year of the date of entry. *See* 19 U.S.C. § 1504. IC & S contends that it should not have been required to protest the October 28, 1988, liquidation in order to be entitled to argue that Customs was legally foreclosed from liquidating the entry anew after the entry had already been deemed liquidated. The government answers that IC & S's "deemed liquidation" defense should have been raised through the protest mechanism, and that when IC & S failed to protest the October 28, 1988, liquidation, the "deemed liquidation" defense was waived, along with any other defenses that might have been based on the invalidity or inaccuracy of the October 28 liquidation. We conclude that the "deemed liquidation" issue did not have to be raised through a protest, and that the trial court should have considered that issue on the merits.

As we noted earlier, the Supreme Court in the *Sherman* case held not only that the issue of fraud had to be tried in court, but also that an importer could challenge a reliquidation on the ground of untimeliness without filing an administrative protest. Significantly, the Court did not treat the untimeliness of the reliquidation as simply a matter of defense, such as a defense based on a statute of limitations. Instead, the Court answered the second certified question in the case by holding that because of the untimeliness of the reliquidation, the government's complaint failed to state a cause of action. *See* 237 U.S. at 148, 158, 35 S.Ct. at 521, 525. Other early decisions were to the same effect, ruling that a liquidation made

after the time for liquidation had expired did not have to be protested, but could be challenged by way of defense in a collection action. *See United States v. Lian*, 10 F.2d 41, 42–43 (2d Cir.1925); *United States v. John A. Heitz, Inc.*, 238 F. 1002, 1003–04 (E.D.Pa.1917); *United States v. Leng*, 18 F. 15, 18 (S.D.N.Y.1883); *United States v. Frazer*, 25 F. Cas. 1207, 1207 (S.D.N.Y.1879) (No. 15,161); *see also Guy B. Barham Co. v. United States*, 35 C.C.P.A. 138, 145 (1948).

Without addressing the pertinent holding of the *Sherman* case, the government relies on a series of cases from this court and its predecessor to support its contention that IC & S was required to protest the October 28, 1988, liquidation in order to preserve its claim that the earlier "deemed liquidation" terminated its liability. While the cases on which the government relies make clear that there is no broad exception to the protest requirement for liquidations that are putatively "void," rather than simply "voidable," we do not read those cases as repudiating the *Sherman* case or otherwise holding that a liquidation of the sort at issue in this case must be protested in order to be challenged in court.

The first of the cases on which the government relies is *United States v. A.N. Deringer, Inc.*, 66 C.C.P.A. 50, 593 F.2d 1015 (1979). In that case, the Customs Service liquidated several entries of food products, but the products were later refused admission by the U.S. Food and Drug Administration. The importer failed to file a timely protest with respect to one of the entries, and the government argued that the importer's objection to the liquidation was therefore waived. The Customs Court held, however, that the failure to file a protest did not bar the importer from challenging the liquidation, because the liquidation was improperly made prior to the FDA's notice of refusal and was therefore void. The Court of Customs and Patent Appeals reversed, noting that section 1514 "contemplates that both the *legality* and correctness of a liquidation be determined, at least initially, via the protest procedure." 593 F.2d at 1020. The court expressly rejected the argument that "voidable" liqui-

dations must be protested, but "void" liquidations do not.

The decision in *Deringer* was followed by this court in *Omni U.S.A., Inc. v. United States*, 840 F.2d 912 (Fed.Cir.1988), and *Juice Farms, Inc. v. United States*, 68 F.3d 1344 (Fed.Cir.1995), both of which confirmed that this court does not recognize a distinction between "void" and "voidable" liquidations for purposes of determining the applicability of the protest requirement of section 1514. In the *Omni* case, Customs was supposed to hold the liquidation of the entries in suspense, but instead liquidated the entries prematurely. Notwithstanding the unlawfulness of the liquidations, the court held that the liquidations became final when the importer failed to file a timely protest or make a timely request for reliquidation under 19 U.S.C. § 1520(c). *See* 840 F.2d at 913–15.

The *Juice Farms* case involved similar facts—Customs erroneously liquidated entries while suspension orders were in effect, but the importer failed to file a timely protest or request for reliquidation. Because the importer's protest was untimely, the court held, the liquidations became "final and conclusive" against all parties. 68 F.3d at 1346. The court then declared that "all liquidations, whether legal or not, are subject to the timely protest requirement. Without timely protest, all liquidations become final and conclusive under 19 U.S.C. § 1514." *Id.*

The cases from this court and the Court of Customs and Patent Appeals on which the government relies all dealt with liquidations that were alleged to be invalid because of some flaw in the process leading to their issuance. The problem with the liquidation at issue in this case, however, is of a different character. The asserted flaw in this case is not in the accuracy of the liquidation or the lawfulness of the process leading up to it, but in the effect that the government seeks to give it—the effect of displacing the liquidation that had already taken effect by operation of law pursuant to the "deemed liquidation" statute, 19 U.S.C. § 1504(a).

The "deemed liquidated" provision of section 1504 was added to the customs laws in 1978 to place a limit on the period within which importers and sureties would be subject to the prospect of liability for a customs entry. *See St. Paul Fire & Marine Ins. Co. v. United States*, 6 F.3d 763, 767 (Fed.Cir. 1993); *Ambassador Div. of Florsheim Shoe v. United States*, 748 F.2d 1560, 1565 (Fed. Cir.1984); *Pagoda Trading Co. v. United States*, 617 F.Supp. 96, 99 (CIT 1985), *aff'd*, 804 F.2d 665 (Fed.Cir.1986); S.Rep. No. 95–778, at 31–32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 2211, 2242–43 ("Under the present law, an importer may learn years after goods have been imported and sold that additional duties are due, or may have deposited more money for estimated duties than are actually due.").

■ The purpose of section 1504 was to bring finality to the duty assessment process. As the Commissioner of Customs said in his statement to the House committee that reported out the 1978 amendments to the Tariff Act, the provision that became section 1504 was designed to "eliminate unanticipated requests for additional duties coming years after the original entry." *Customs Procedural Reform Act of 1977: Hearings on H.R. 8149 and H.R. 8222 Before the Subcomm. on Trade of the House Comm. on Ways and Means*, 95th Cong., 1st Sess. 56 (1977) (statement of Robert E. Chasen, Commissioner of Customs). The effect of a "deemed liquidation" is therefore to fix the liability of the importer or surety and, once that liability is discharged, to terminate the government's cause of action for the entry in question. Thus, a "deemed liquidation" under section 1504 has the same effect as the expiration of the time for reliquidation in *Sherman:* it subjects any further collection efforts by the government in connection with the same entry to dismissal for failure to state a claim upon which relief can be granted.

The entry at issue in this case was deemed liquidated on or about September 19, 1988, one year after the entry. No protest was filed nor was any other action taken with respect to that liquidation. Instead, the government simply made a new liquidation a month later, on October 28, 1988, and treated that new liquidation as the operative liquidation for purposes of this case.

The government has suggested to us that its October 28, 1988, liquidation might be treated as a reliquidation, but its complaint alleged no ground for reliquidation at that time, and the government has not identified any such ground that is available to it in this case. The government has not suggested the presence of fraud in this case, which might have justified a reliquidation under former 19 U.S.C. § 1521 (1988); reliquidation would not be available under 19 U.S.C. § 1520(c), since that authority is limited to errors "adverse to the importer"; and reliquidation under 19 U.S.C. § 1501 would not be permitted because that provision applies only to liquidations made in accordance with 19 U.S.C. § 1500, and not to "deemed liquidations" under 19 U.S.C. § 1504. The "deemed liquidation" must therefore be regarded as final.

■ In cases in which a liquidation has become final, the government cannot seek to recover additional duties simply by making a new liquidation of the original entry. Regardless of the accuracy or procedural correctness of the new liquidation, it would have no legal effect, because it would be barred by principles of res judicata. In that and other analogous settings, the liquidation simply does not have the capacity to give rise to liability. For example, even if a liquidation were obtained through unimpeachable procedures and stated the correct duty, it would not result in the imposition of liability on a person who had nothing whatsoever to do with the entry but was mistakenly identified as the importer or surety. Such a party would challenge the liquidation not for its validity or accuracy, but because the liquidation could not have any legal effect on that party's rights. As the government acknowledged at oral argument, a party under those circumstances would not have to protest the liquidation in order to avoid being subjected to a binding liability for the claimed duties. Because the liquidation could not create a legal liability for the uninvolved party, that party should not be required to shoulder the burden of initiating a protest and tendering the asserted underpayment of duties.

IC & S's challenge to the October 28 liquidation is of the same character as those discussed above, and thus is distinguishable from the challenges to the liquidations at issue in *Deringer, Omni,* and *Juice Farms.* IC & S is not contending that the liquidation is procedurally or factually flawed, but is asserting that it has no legal effect in the circumstances of this case and therefore cannot serve as the basis for the imposition of liability. For that reason, this case fits within the rule of *Sherman* rather than the principles of *Deringer, Omni,* and *Juice Farms.*

If an importer or surety were invariably required to protest a liquidation in order to preserve the right to challenge it, the opportunities for abuse would be manifest. Under the government's proposed construction of section 1514, there would be nothing, in theory, that would prevent Customs from conducting multiple successive liquidations of the same entry and requiring the importer or surety to assume the burdens of protesting each one. Likewise, Customs could purport to liquidate an entry anew, years after the first liquidation had become final, and thereby impose liability on the importer or surety if the importer or surety were not vigilant in watching for notice of such untimely liquidations or if it were no longer able to undertake the burden of filing and pursuing a protest.

The potential for abuse from a rule requiring protests in such cases is sufficiently plain that we think it unlikely that Congress would have intended the protest requirement to apply so broadly. Rather, we discern the principle of *Sherman,* unaffected by subsequent legislation, to be that once the government's cause of action expires, Customs cannot breathe new life into it merely by liquidating the entry anew. We therefore hold that because Cherry Hill's entry was liquidated by operation of law prior to the October 28, 1988, liquidation, IC & S was not required to protest the October 28 liquidation in order to be entitled to defend against liability on the ground of the deemed liquidation. Accordingly, the government was not entitled to summary judgment in its favor on the ground that IC & S failed to protest the October 28 liquidation. Although there does not appear to be any dispute over facts material to the issue of liability in this case, we leave it to the trial

court to determine whether IC & S is entitled to judgment in its favor on the government's complaint.

Each party shall bear its own costs for this appeal.

*REVERSED AND REMANDED.*