**Slip Op. 02-111**

## UNITED STATES COURT OF INTERNATIONAL TRADE

_____

UNITED STATES,

                             *Plaintiff,*

               v.

T.J. MANALO, INC.,

                             *Defendant.*

_____

Court No. 00-07-00372

[Plaintiff's motion for summary judgment denied.]

Decided: September 11, 2002

Robert D. McCallum, Jr., Assistant Attorney General; Barbara S. Williams, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; Vickie Shaw, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, Of Counsel; for Plaintiff.

## OPINION

RIDGWAY, Judge:

In this action, filed on behalf of the U.S. Customs Service ("Customs"), the Government seeks to recover unpaid customs duties, fees, and accrued pre-liquidation interest totaling $772,995.55 (as well as pre-and post-judgment interest) allegedly owed by Defendant T.J. Manalo, Inc. ("TJM"). The Government's pending motion for summary judgment asserts that Customs' liquidation of an entry and assessment of duties are final and conclusive where – as here – the importer failed to file an action in this Court challenging Customs' denial of its protest.

Jurisdiction lies under 28 U.S.C. §§ 1582(3) (1988).[1]  For the reasons set forth below, the Government's motion is denied.

# I. Background

In the four-year period between February 15, 1990 and February 14, 1994, TJM made at least 147 entries of merchandise through the port of Cincinnati, Ohio – 46 entries in 1990-91; 31 entries in 1991-92; 20 entries in 1992-93; and 50 entries in 1993-94.[2]  Complaint ¶¶ 8, 15, 22, 29 and Exhibits referenced therein; Answer ¶¶ 8, 15, 22, 29.  Each of those entries was covered by a continuous customs bond issued to TJM by Intercargo Insurance Company ("Intercargo"),[3] with a maximum bond limit of $100,000.00.  Under the terms of that bond, TJM and Intercargo are jointly and severally liable for duties, taxes and charges payable on entries made under it.  Complaint ¶¶ 5-6, Exhibit A; Answer ¶¶ 5-6.

---

[1]While all statutory citations in this opinion are to the 1988 version of the U.S. Code, the pertinent text of the cited provisions was the same at all times relevant herein.

[2]Analysis of the records in a related case, XL Specialty Ins. Co. v. United States, Court No. 00-12-00544 (CIT filed Dec. 4, 2000), suggests that several entries made during the four-year period may have been omitted (probably inadvertently) from the Summons and Complaint in this action. See Letter from Court to Counsel for Plaintiff (Sept. 10, 2002), with Enclosure. See also Summons, XL Specialty Ins. Co. v. United States, Court No. 00-12-00558 (CIT filed Dec. 20, 2000) (involving seven entries at issue in the case at bar).

Although it is irrelevant to the motion at bar, it appears that the merchandise at issue was men's sweaters, which TJM generally imported from Hong Kong and sold to retailers such as J.C. Penney, Lazarus, and Bloomingdale's. See HQ 547591 (Apr. 21, 2000).

[3]Intercargo was formerly known as International Cargo and Surety Company, and is now known as XL Specialty Insurance Company.

Customs timely liquidated each of the 147 entries, assessing additional duties and fees based on an increase in the appraised value of the merchandise. Specifically, Customs determined that the importer and the foreign manufacturer were related, which affected the transaction value, which was the basis on which the merchandise had been appraised.[4] *See generally* HQ 547591 (Apr. 21, 2000); Plaintiff's Statement of Undisputed Facts ¶ 5; Memorandum in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Brief") at 1-2. Customs forwarded bills to TJM and Intercargo for the balance due, but the sum went unpaid. *See generally* Complaint ¶¶ 11-13, 18-20, 25-27, 32-34; Answer ¶¶ 13, 20, 27, 34; Plaintiff's Statement of Undisputed Facts ¶¶ 7-8. TJM protested the liquidations, but they were upheld by Customs in a ruling letter; and, on June 19, 2000, the lead protest was denied. *See* HQ 547591 (Apr. 21, 2000); Plaintiff's Statement of Undisputed Facts ¶ 5; Counsel for Defendant's Brief in Support of Motion for Leave to Withdraw as Counsel (Apr. 12, 2002) ("Motion for Leave to Withdraw") at 2.

For some reason, TJM elected not to file an action in this Court challenging Customs' denial of its protests; and, to date, it has paid nothing on the balance due. *See* Plaintiff's Statement of Undisputed Facts ¶ 8; Motion for Leave to Withdraw at 2. In contrast, Intercargo deposited duties in the amount of $100,000.00 (the limit under its bond), and filed a separate action contesting Customs' liquidation of TJM's entries.[5] *See* Complaint, XL Specialty Ins. Co. v. United States,

---

[4]"Transaction value" is defined as "the price actually paid or payable for merchandise when sold for exportation to the United States," with certain adjustments. 19 U.S.C. § 1401a(b)(1) (1988).

[5]Intercargo was originally named as a co-defendant in this action. After Intercargo paid all sums owed by it under the bond, the Government filed a consent motion to dismiss Intercargo from the case. That motion was granted. *See* Order (dated Apr. 4, 2001).

Court No. 00-12-00544 (CIT filed Dec. 4, 2000). TJM has not sought to become a plaintiff, or otherwise participate, in that case.

## II.  **Standard of Review**

Summary judgment is a favored procedural device "to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (*quoting* Fed. R. Civ. P. 1). Under USCIT Rule 56(c), summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and the moving party "is entitled to . . . judgment as a matter of law." *See* Celotex Corp., 477 U.S. at 322-23; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Moreover, where a motion for summary judgment is filed and properly supported, an adverse party "may not rest upon the mere allegations or denials" of the pleadings to defeat it. USCIT Rule 56(h). To the contrary, the opposing party must set forth specific facts "by affidavits or as otherwise provided in [Rule 56]" showing that there is a genuine issue for trial. *Id*. Further, all facts set forth in the movant's Statement of Material Facts are deemed admitted, unless specifically controverted by an opposing Statement of Material Facts filed by the adverse party pursuant to USCIT Rule 56(h).

However, summary judgment cannot be awarded by default. Thus, a nonmovant's failure to respond to a summary judgment motion in conformity with the requirements of Rule 56 does not automatically entitle the moving party to judgment. The rule provides that summary judgment shall be entered only "if appropriate." USCIT R. 56(e). Accordingly, a court has an independent obligation to determine, on the basis of the parties' submissions, whether a movant is entitled to

judgment as a matter of law.[6]  *See*, *e.g.*, <u>Precision Specialty Metals, Inc. v. United States</u>, 24 CIT

____, ____, 116 F. Supp. 2d 1350, 1359-60 (2000), *appeal docketed*, No. 02-1233 (Fed. Cir. Feb.

27, 2002), *modified*, 25 CIT ____, 182 F. Supp. 2d 1314 (2001).  In short, summary judgment may

be inappropriate even where the motion is completely unopposed.  <u>Precision Specialty Metals</u>, 24

CIT at ____, 116 F. Supp. 2d at 1359-60.

This is just such a case.  The Government's motion here is unopposed.  Indeed, TJM is no

longer represented in the action, and appears to be in default.[7]  And, as set forth in greater detail



[6]Indeed, "if the party who fails to respond is acting pro se, some courts undertake a 'duty' to examine other documents filed in the case to determine whether a *question of fact* remains," rather than simply granting summary judgment based on the face of the motion.  11 <u>Moore's Federal Practice</u> § 56.10[3][b] (3d ed. 1997) (emphasis added) (*citing* <u>Filipos v. Sidovar</u>, 77 F. Supp. 2d 636, 637-38 (E.D. Pa. 1999) (when pro se plaintiff failed to respond to summary judgment motion, court *sua sponte* scrutinized complaint to ascertain whether issue of material fact existed, and independently sought to identify potential legal basis for claim to determine whether defendant entitled to judgment as a matter of law, noting court's "duty to construe pro se complaints liberally")).

Some courts have read Rule 56(c) to require the trial court to make an independent search of the record for evidence of a genuine dispute of material fact *even when the nonmovant is not pro se*.  *See* 11 <u>Moore's Federal Practice</u> § 56.10[3][b]; William W. Schwarzer, et al., <u>The Analysis and Decision of Summary Judgment Motions: A Monograph on Rule 56 of the Federal Rules of Civil Procedure</u> (Federal Judicial Center 1991) ("FJC Monograph") 49 n.219, and cases cited there.  But, as a matter of both practice and policy, requiring trial courts to scour "the depositions, interrogatory answers and, and other papers" in case files "would often impose an unmanageable burden."  *Id*.

[7]TJM was initially represented by counsel in this action.  However, TJM's counsel later sought leave to withdraw, citing TJM's failure to communicate with counsel in the preparation of its defense and its failure pay its legal fees.  *See* Motion For Leave to Withdraw.  That motion was granted, and TJM was accorded additional time to retain substitute counsel and to file a response to the Government's motion for summary judgment.  All papers since counsel's withdrawal have been served on TJM at all last known addresses, and through deposit with the Clerk of the Court addressed to TJM's attention, in accordance with USCIT Rule 5(b).  Still, there has been no communication whatsoever from TJM.

below, there is no dispute as to any material fact. Nevertheless – based on the Government's moving papers, as well as the Court's independent review of the file in this matter and in the related action, XL Specialty Ins. Co. – the conclusion is inescapable that, under the specific circumstances presented here, the matter is not ripe for summary judgment.

## III. **Analysis**

A. Existence of A Genuine Dispute of Material Fact

Pursuant to USCIT Rule 56(h), all facts set forth in the Government's Statement of Undisputed Facts are deemed admitted unless properly controverted by the opposing party. Here, the Government properly argues that – because TJM failed to file any opposition to the Government's motion for summary judgment – the Government's statement of material facts is deemed admitted. *See*, *e.g.*, United States v. Continental Seafoods, Inc., 11 CIT 768, 773-74, 672 F. Supp. 1481, 1486-87 (1987).

An independent review of the file in this matter confirms that there is no genuine dispute as to any material fact. *See generally* Filipos, 77 F. Supp. 2d at 637-38 (where pro se plaintiff failed to respond to motion for summary judgment, court scrutinized complaint in search for dispute of material fact). Under the Government's theory of the case, the Government must establish, in essence, (1) that TJM entered the merchandise at issue; (2) that Customs liquidated the entries,

---

Under the circumstances, the Court initially explored the Government's interest in seeking a default judgment under USCIT Rule 55. However, as the Government correctly noted, a default judgment would be inappropriate in light of the relatively advanced stage of this litigation. *See* Letter from Counsel for Defendant (Aug. 26, 2002) at 3-4 (*quoting* 10 Moore's Federal Practice § 55.10[2][b] (default intended for use "at the initial stages of a lawsuit") ).

assessing additional duties and fees; and (3) that, although it protested the liquidations, TJM never brought an action in this forum challenging Customs' denial of its protests. None of these points is in dispute.

In its Complaint, the Government alleged that TJM entered the merchandise at issue. *See* Complaint ¶¶ 8, 9, 15, 16, 22, 23, 29, 30. In its Answer, TJM admitted each of those allegations. *See* Answer ¶¶ 8, 9, 15, 16, 22, 23, 29, 30. It is thus undisputed that TJM entered the merchandise at issue.

Similarly, in its Complaint, the Government alleged that Customs liquidated the relevant entries with an increase. *See* Complaint ¶¶ 10, 17, 24 and 31. And, although TJM did not outright admit those allegations, it denied them only "for lack of knowledge or information sufficient to form a belief as to the truth of the matter asserted." *See* Answer ¶¶ 10, 17, 24, 31. In other words, TJM did not affirmatively dispute that the relevant entries were liquidated with an increase. Even more to the point, the Government attached to its Complaint the entry papers for the entries at issue here. TJM never challenged the authenticity of those papers, which indisputably establish that Customs timely liquidated the entries with an increase.[8]

Finally, a review of the files of the U.S. Court of International Trade reveals that TJM has never commenced an action contesting challenging Customs' denial of its protests in this matter. *See generally* Grimes v. Pinn Bros. Constr. Co., No. C-01-2787, 2002 U.S. Dist. LEXIS 3631, at *4-5 (N.D. Cal. Feb. 26, 2002) ("It is proper for a court to take judicial notice of the contents in court

---

[8]Moreover, in its Answer, TJM asserted as an affirmative defense that Customs' liquidation of the entries was contrary to law. *See* Answer ¶ 36. In effect, that claim constitutes an admission that Customs liquidated the merchandise against TJM's interests.

files in other lawsuits.") (*citing* <u>Mullis v. United States Bank. Ct.</u>, 828 F.2d 1385, 1388, n.9 (9th Cir. 1987), *cert. denied*, 486 U.S. 1040 (1988) ).

In short, based not only on TJM's failure to controvert the allegations in the Government's Statement of Undisputed Facts, but also on an independent review of the file in this action, it appears that – as the Government contends – there is no dispute as to any material fact in this matter.

### B. Entitlement to Judgment As A Matter of Law

The Government's motion also argues that it is entitled to judgment as a matter of law. *See generally* Plaintiff's Brief at 4-6. In support of that claim, the Government points to 19 U.S.C. § 1514(a), which provides (with limited exceptions, not relevant here)[9] that a liquidation is final upon all persons unless protested, and a civil action contesting denial of the protest is commenced in the U.S. Court of International Trade:

> *[D]ecisions of [Customs]*, including the legality of all orders and findings entering into the same, as to –
>
>         \*    \*    \*
>
> (2) the classification and rate and amount of duties chargeable;
>
> (3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;

---

[9]Under 19 U.S.C. § 1514(a)(5), virtually all liquidations – even those contrary to law – are final unless properly challenged in this Court. The only exceptions are "deemed liquidations." *See* <u>United States v. Cherry Hill Textiles, Inc.</u>, 112 F.3d 1550 (Fed. Cir. 1997).

* * *

(5) the liquidation or reliquidation of an entry . . .

*shall be final and conclusive* upon all persons . . . unless a protest is filed in accordance with this section, or *unless a civil action contesting the denial of a protest*, in whole or in part, *is commenced in the United States Court of International Trade* . . . .

19 U.S.C. § 1514(a) (1988) (emphasis added).

To commence an action in this Court, a party must file an action within 180 days after the date of mailing of notice of denial of a protest. 28 U.S.C. § 2636(a)(1) (1988). In addition, a party must pay "all liquidated duties, charges, or exactions . . . at the time the action is commenced . . . ." 28 U.S.C. § 2637(a) (1988). *See* Nature's Farm Prods., Inc. v. United States, 819 F.2d 1127, 1128 (Fed. Cir. 1987); *see also* H.R. Rep. No. 96-1235 at 57 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3729, 3769 ("*prior to* the institution of a suit [under 28 U.S.C. § 1582(3)] contesting the denial of a protest . . . , all liquidated duties, charges or exactions must have been paid.") (emphasis added).

Here, it is undisputed that TJM has never filed an action in this Court challenging the denial of its protests. Nor has TJM ever paid any of the sum due. The Government's motion contends that Customs' liquidation of the entries at issue is therefore final and conclusive as to TJM, and that TJM is liable for the increased duties, fees and interest. *See* Plaintiff's Brief at 4.

According to the papers filed in this action, TJM contemplated two affirmative defenses to the Government's allegations.

TJM's first affirmative defense is that the Government's claims are barred by the statute of limitations. *See* Answer ¶ 35. However, as the Government correctly notes, it is well-settled law that there is no statute of limitations in an action of this nature. *See* Letter from Counsel for Plaintiff (Aug. 26, 2002) at 3. *See generally* United States v. Ataka Am., Inc., 17 CIT 598, 600, 826 F. Supp. 495, 497 (1993) ("[t]he general rule is that the United States is exempt from statutes of limitations unless Congress has expressly provided otherwise.") (*citing* United States v. City of Palm Beach Gardens, 635 F.2d 337, 339 (5th Cir. 1981), *citing* Guaranty Trust Co. v. United States, 304 U.S. 126, 132-33 (1938) ).

As its second defense, TJM has contended that Customs' liquidation of the entries at issue was "contrary to law." *See* Answer ¶ 36. But, in its motion for summary judgment, the Government emphasizes that – as discussed above – if TJM wished to contest the validity of the liquidations, it was obligated to timely commence an action in this Court and to pay "all [outstanding] liquidated duties, charges, or exactions." *See* Plaintiff's Brief at 4; 19 U.S.C. § 1514(a) (1988); 28 U.S.C. §§ 2636, 2637 (1988). In essence, the Government argues that TJM cannot use this case to collaterally attack the validity of Customs' actions – that is, that, having failed to wield the "sword" by availing itself of the opportunity to affirmatively assert its claims by initiating an action in this Court, TJM is precluded from raising the same arguments as a "shield" in the Government's collection action.

On the strength of its case-in-chief and its responses to TJM's affirmative defenses, the Government's motion contends that it is entitled to judgment as a matter of law. However, given the facts and circumstances of this case, that is a troubling proposition.

As discussed above, TJM's surety is challenging in a related case the validity of Customs' liquidation of virtually all (if not all) of the entries at issue here. Indeed, it appears that the grounds raised by the surety are the same as those asserted by TJM in its protests. *Compare* HQ 547591 (Apr. 21, 2000) *and* Complaint, XL Specialty Ins. Co.. If the surety were later to prevail in the related case, any judgment entered at this time in this action would effectively constitute a "windfall" for the Government.

The Government now acknowledges that these are uncharted waters. *See* Audiotape: Teleconference of Court with Counsel for Plaintiff (Sept. 9, 2002) ("9/9/02 Audiotape"). Although the postulated scenario would not be a case of inconsistent decisions *per se* (because the grounds asserted by the Government here do not go to the validity of the liquidations), and although the Government's legal arguments appear (at least as a general proposition) to be unexceptionable, it would nevertheless be premature – and arguably unseemly – to give the Court's imprimatur to the Government's efforts to collect additional duties and fees for liquidations that may yet be determined to have been unlawful.[10]

In sum, while it appears that there is no dispute as to any material fact, it is less clear whether the Government is "entitled to . . . judgment as a matter of law." USCIT R. 56(c). In any event, even where a movant has met its burden, a court retains the discretion to deny summary judgment –

---

[10]As counsel for the Government recently noted, if the surety prevails in the related case, Customs will reliquidate the entries at issue there – which include all (or virtually all) of the entries at issue here. Summary judgment in favor of the Government in this case thus would leave the Government in a position to collect on entries that were reliquidated. As counsel for the Government put it, the Government would then be "pursuing an action on liquidations that doesn't [sic] exist anymore." 9/9/02 Audiotape. Counsel advised that she has found no precedent on point. *Id*.

notwithstanding the seemingly mandatory language of Rule 56(c), which states that the court "shall" grant summary judgment "forthwith" if there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Rule 56 is thus "far less mandatory" than the language of the rule would indicate. 11 Moore's Federal Practice § 56.32[6].

"There is long-established doctrine holding that a court may deny summary judgment if it believes further pretrial activity or trial adjudication will sharpen the facts and law at issue and lead to a more accurate or just decision, or where further development of the facts may enhance the court's legal analysis." *Id. See also id.* n. 18 (citing cases). *See also* FJC Monograph at 49, and cases cited there (noting that, in Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, the Supreme Court "recognized that there may be cases where there is no manifest material factual dispute but the trial judge nevertheless 'believe[s] that the better course would be to proceed to a full trial' ").

In this case, it is beyond cavil that the better course is to defer judgment pending a final disposition in the related case, XL Specialty Ins. Co. – particularly since the defendant in this case is absent. In light of the identity of interests between the defendant in this case and the plaintiff in the other case, the prosecution of that case conceivably may enure to the benefit of the defendant here. The outcome of that case may enlighten and inform the actions of the Court and the Government in this case as well. Moreover, the passage of time will not prejudice the Government. If the Government prevails in the other case, it will be free to renew its motion here, and there will be no pall hanging over it. If, on the other hand, the surety prevails, the Government can reevaluate its position and decide, for example, whether it wishes to abandon this action or to renew its motion. Even the Government now appears to concede that summary judgment would be inappropriate at this

time, and that this action should be stayed pending the outcome of <u>XL Specialty Ins. Co.</u>. *See* 9/9/02 Audiotape.

## IV. <u>Conclusion</u>

For the reasons discussed above, the Government's unopposed motion for summary judgment is denied as premature. A separate order will enter accordingly.

_____
Delissa A. Ridgway
Judge

Decided: September 11, 2002
      New York, New York