**Slip Op. 06-22**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | **Before: Barzilay, Judge** |
| ) | |
| **v.** ) | **Court No. 03-00005** |
| ) | |
| **GOLDEN GATE PETROLEUM CO.,** ) | |
| ) | |
| **Defendant.** ) | |

**OPINION**

[Plaintiff's motion for summary judgment to recover unpaid duties and interest is granted.]

Dated: February 21, 2006.

*Peter D. Keisler*, Assistant Attorney General; (*Barbara S. Williams*), Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, *Bruce Neal Stratvert*, (*Marcella Powell*); *Michael Felts*, Office of Assistant Chief Counsel, U.S. Customs and Border Protection, of counsel, for the plaintiff.

*Collier, Shannon, Scott, PLLC* (*Michael D. Sherman*), *Thomas W. Mitchell*, for the defendant.

Barzilay, Judge:    Plaintiff, the United States (the "Government"), commenced this action pursuant to 28 U.S.C. § 1582(3) to recover unpaid duties in the amount of $ 1,359,172.50 and accrued interest claimed to be due on one entry made by Defendant at the port of San Francisco, California, on October 8, 1985.  The parties have filed cross-motions for summary judgment under USCIT Rule 56.  The Government alleges that Defendant is liable for these duties because Customs' liquidation on May 30, 1986, of the underlying entry was final.

Defendant denies its liability, claiming that Customs assessed duties against the wrong company and in the wrong amount.

## UNCONTESTED FACTS

The central dispute in this case concerns the identity of the importer that should be held liable for the duties on the entry at issue. Defendant, Golden Gate Petroleum Company ("Golden Gate Petroleum"), claims that it was not the actual importer for purposes of duty liability and that Golden Gate Petroleum International, Ltd. ("Golden Gate Petroleum Int'l"), Golden Gate Petroleum's subsidiary – not a party[1] to this case – is the liable importer. The evidence presented shows that in the underlying transaction, Golden Gate Petroleum Int'l purchased 225,464 barrels of leaded gasoline for $ 4,966,885.00 from Nichimen Corporation ("Nichimen") in 1985. *Aff. O'Keefe*[2] ¶ 6. Although the initial purchase contract listed "Golden Gate Petroleum Company" as the contracting party, Nichimen invoiced Golden Gate Petroleum Int'l for the purchase of the gasoline, and Golden Gate Petroleum Int'l paid for the merchandise with its loan proceeds from International Bankers Incorporated, S.A. *Aff. O'Keefe*, Ex. 4, Ex. 5. Golden Gate Petroleum Int'l was also the party that chartered the vessel, the M/T Nairi, to transport the purchased gasoline and toluene, bought in Japan, from the Soviet Union and Japan to the United States. *Aff. O'Keefe* ¶ 9. Upon arrival in the United States, the M/T Nairi unloaded about 44 % of the gasoline in Portland, Oregon. The relevant entry documents were completed allegedly by Golden Gate Petroleum Int'l's broker, Livingston International, Inc. *Aff. O'Keefe* ¶

---

[1] Golden Gate Petroleum Int'l is no longer in business.

[2] Dennis M. O'Keefe is President of Golden Gate Petroleum Co. and was President of Golden Gate Petroleum International, Ltd. He executed his affidavit on July 21, 2005.

12. "Golden Gate Petroleum" was identified as the importer of record on the Customs Form 7501 (Entry Summary) and as the "purchaser" on the Pro Forma Invoice. *Aff. O'Keefe,* Ex. 13. The Government liquidated the Portland entry as "motor fuel" under item 475.25, TSUS, the same tariff classification under which Golden Gate Petroleum had entered the product.

The M/T Nairi then transported the remaining gasoline, 5,235,720 gallons, and all of the toluene to San Francisco. *Aff. O'Keefe* ¶ 13. The Customs Form 7501 for the San Francisco entry again identified "Golden Gate Petroleum" as the importer of record and listed Golden Gate Petroleum's importer number and bond number on the entry summary. The form was prepared and signed by another broker, Thornley & Pitt. The San Francisco Form 7501 contained one apparent error: while the quantity of the merchandise unloaded in San Francisco was correct, the listed "entered value" of $ 4,966,885 was not correct because the amount reflected the value of the entire shipment instead of the value of the portion unloaded in San Francisco, which was $ 2,991,997. Apparently, the overstated value of the San Francisco entry had no immediate effect on Golden Gate Petroleum's classification and initial deposit of duties under item 475.25, TSUS, a specific tariff applied to the quantity entered. Golden Gate Petroleum deposited estimated duties worth $ 130,893.00 on the leaded gasoline portion of the entry. Customs, however, liquidated the San Francisco entry under item 432.10, TSUS, as "a mixture in whole or in part of hydrocarbons derived in whole or in part from petroleum." *Aff. O'Keefe* ¶ 20. This reclassification resulted in a column 2 tariff rate of 30 percent *ad valorem*, a higher rate than as entered, and Customs applied the 30 percent to the incorrect "entered value" of $ 4,966,885, assessing additional duties of $ 1,359,172.50. *Aff. O'Keefe* ¶ 20. On May 30, 1986, Customs

billed Golden Gate Petroleum's surety, Fireman's Fund Insurance Company, and the surety paid the liability limit of $ 200,000.00 under that bond.

Golden Gate Petroleum timely protested this change in classification and liquidation. The protest named "Golden Gate Petroleum Company, Inc." as the importer. The protest was made against Customs' classification of the merchandise in item 432.10, TSUS, claiming that it was properly classifiable under item 475.25, TSUS, or alternatively under 475.35, TSUS, and did not challenge any other aspects of Customs' liquidation. It did not claim that the incorrect importer was listed on the entry documents, nor did it note the incorrect value used to appraise the entry and increase the amount of duty. Four years after the protest was filed, Customs denied the protest. Golden Gate Petroleum did not challenge that denial in this Court. It now claims that it did not have funds to pay the $ 1,359,172 in additional assessed duties, plus accrued interest at that time of $ 774,135, to meet the jurisdictional prerequisite for the filing of such a suit under 28. U.S.C. § 2636(a).

Since the entries were liquidated, Customs has unsuccessfully attempted to collect the additional duty and accrued interest. As a result of Golden Gate's failure to pay, the Government commenced this action pursuant to 28 U.S.C. § 1582(3).[3]

---

[3]On July 8, 1991, Customs commenced an administrative penalty proceeding against Golden Gate Petroleum under 19 U.S.C. § 1592 concerning the Portland entry. *Aff. O'Keefe* ¶ 22. The pre-penalty notice claimed that Golden Gate Petroleum had been "grossly negligent" in classifying the gasoline from Russia as "motor fuel" under 475.25, TSUS. *Aff. O'Keefe* ¶ 22. It further stated that Customs would seek over $ 2.7 million in additional duties and penalties. *Aff. O'Keefe* ¶ 22. Golden Gate Petroleum objected administratively to the pre-penalty notice. *Aff. O'Keefe* ¶ 23. Customs then issued a notice of penalty lowering the level of culpability, alleging that Golden Gate Petroleum had "negligently" classified the gasoline on the Portland entry, and demanding a penalty and additional duties of over $ 1.6 million. Customs agreed to stay the administrative aspect of the penalty proceeding, contingent on Golden Gate Petroleum's

## DISCUSSION

The court has exclusive jurisdiction over this case pursuant to 28 U.S.C. § 1582(3)

(2004).  Summary judgment is appropriate when "there is no *genuine* issue as to any *material*

fact."  USCIT R. 56(c) (emphasis added); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 247-48 (1986).  On summary judgment motion, the court "shall if practicable ascertain what

material facts exist without substantial controversy and what material facts are actually and in

good faith controverted."  *See* USCIT R. 56(d).  If no genuine issue of material fact exists, the

court determines whether either party "is entitled to a judgment as a matter of law."  USCIT R.

56(c).  "As to materiality, the substantive law will identify which facts are material. Only

disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.

### 1. The Importer's Identity for the Entry at Issue

In this action, the Government seeks to recover unpaid duties claiming that Defendant, as

the importer of record, is liable for payment of estimated duties and accrued interest pursuant to

19 U.S.C. § 1505.[4]  "The identity of the importer is a material fact for determining duty liability."

---

agreement to extend the statute of limitations for Customs to bring a court action to impose a penalty until November 22, 2004. *Aff. O'Keefe* ¶ 24.  It appears that the waiver on the statute of limitations has run, and the Government has not filed a penalty action on the Portland entry in this Court. *Def.'s Opp. Br.* 8.

[4] At the time of the entry, section 1505 provided in relevant part:
(a) Deposit of estimated duties and fees
Unless merchandise is entered for warehouse or transportation, or under bond, the *importer of record* shall deposit with the appropriate customs officer at the time of making entry . . . the amount of duties estimated by such customs officer to be payable thereon.
(b) Collection or refund

*Henry Mast Greenhouses, Inc. v. United States*, 19 CIT 1414, 1416, 966 F. Supp. 1226, 1229

(1995). The Government bears the burden of establishing that Defendant is the importer for

purposes of duty liability. *See* 28 U.S.C. § 2639[5]; *Henry Mast Greenhouses*, 19 CIT at 1417 n.6,

(citing *United States v. Bishop*, 125 F. 181 (8th Cir. 1903)).

Reading the facts of this case with the governing substantive law establishes that the

Government has met its burden of showing that Plaintiff was the importer for purposes of duty

liability. Customs' regulations define "importer" as

> . . . the person primarily liable for the payment of any duties on the merchandise, or an
> authorized agent acting on his behalf. The importer may be:
> (1) The consignee, or
> (2) The *importer of record*, or
> (3) The actual owner of the merchandise, if an actual owner's declaration and superseding
> bond has been filed in accordance with § 141.20 of this chapter, or
> (4) The transferee of the merchandise, if the right to withdraw merchandise in a bonded
> warehouse has been transferred in accordance with subpart C of part 144 of this chapter.

19 C.F.R. § 101.1 (emphasis added). The statute provides that the "importer of record" is liable

---

> The appropriate customs officer shall collect any increased or additional duties
> due or refund any excess of duties deposited as determined on a liquidation or
> reliquidation.

19 U.S.C. § 1505 (1982 & Supp. V 1987) (emphasis added).

[5] 28 U.S.C. § 2639 (2000) provides for the burden of proof:
(a)(1) Except as provided in paragraph (2) of this subsection, in any civil action
commenced in the Court of International Trade under section 515, 516, or 516A
of the Tariff Act of 1930, the decision of the Secretary of the Treasury, the
administering authority, or the International Trade Commission is presumed to be
correct. The burden of proving otherwise shall rest upon the party challenging
such decision.
(2) The provisions of paragraph (1) of this subsection shall not apply to any civil
action commenced in the Court of International Trade under section 1582 of this
title.

for estimated duties. 19 U.S.C. § 1505(a). In addition, pursuant to 19 U.S.C. § 1484(a)(2)(B), "the required documentation or information shall be filed or electronically transmitted either by the owner or purchaser of the merchandise or, when appropriately designated by the owner, purchaser, or consignee of the merchandise, a person holding a valid license under section 1641 of this title." In this case, the entry documents for the San Francisco entry were completed by Golden Gate Petroleum's broker. The official entry documents state that Defendant was the "importer of record" for the San Francisco entry. Specifically, "Golden Gate Petroleum" was designated as the importer of record on Form 7501 and its importer identification number was listed on Form 7501. In addition, Golden Gate Petroleum was the principal on the bond, its importer number appears on the bond, and it is named on the pro forma invoice for the merchandise at issue. Notably, Golden Gate Petroleum's surety, Fireman's Fund Insurance Company, has paid the limit of liability under that bond for the increase in duties on the San Francisco entry.

Nevertheless, Defendant argues that the importer of record in this case is Golden Gate Petroleum Int'l and that the broker made a mistake by using Golden Gate Petroleum's identification number. The court cannot accept this argument as the entry documents state unambiguously that the importer of record is "Golden Gate Petroleum." In addition, at the time, Customs' computer system contained no record of an importer by the name of "Golden Gate Petroleum International, Ltd." or of a bond issued to that entity. *See Letter from Customs*, Apr. 10, 1996. Meanwhile, Customs requires that

> Each person, business firm, Government agency, or other organization shall file
> Customs Form 5106, Notification of Importer's Number or Application for

> Importer's Number, or Notice of Change of Name or Address, with the first formal entry which is submitted or the first request for services that will result in the issuance of a bill or a refund check upon adjustment of a cash collection.

19 C.F.R. § 24.5(a) (1985).

Further supporting the Government's satisfaction of its burden, Golden Gate Petroleum was the party that protested Customs' liquidation of the San Francisco entry. The protest was filed by "Golden Gate Petroleum," using its importer identification number and relevant entry document number. Tellingly, in the accompanying Memorandum in Support of Protest and Application for Further Review, Golden Gate Petroleum wrote "On October 7, 1995, Golden Gate Petroleum Company, Inc. . . . imported into San Francisco a cargo of petroleum products aboard the vessel M/T 'Narai' [sic]." *Pl.'s* Ex. B. *See Prestigeline v. United States*, 75 Cust. Ct. 139, 143, 406 F. Supp. 532, 535 (1975) (finding that "the true identity of the protesting party and plaintiff in [a classification action] is readily ascertainable from the importer's identifying number appearing on the protests" that has to be furnished under 19 C.F.R. §§ 24.5 and 174.13(a)(2)).

Plaintiff has not presented any evidence undermining the validity of the entry documents and the protest filed for the San Francisco entry. Instead, Defendant argues that the Government's claim is unlawful and should be dismissed because Golden Gate Petroleum Int'l was the sole owner, shipper and importer of the gasoline. Defendant insists that the court look at the underlying transaction to establish that Golden Gate Petroleum Int'l was the "actual" importer. In support of its position, Defendant cites to dicta in *United States v. Cherry Hill Textiles, Inc.*, where the Federal Circuit stated that "if a liquidation were obtained through

unimpeachable procedures and stated the correct duty, it would not result in the imposition of liability on a person who had nothing whatsoever to do with the entry but was mistakenly identified as the importer or surety." 112 F.3d 1550, 1560 (Fed. Cir. 1997). While Golden Gate Petroleum has shown that Golden Gate Petroleum Int'l negotiated and signed a contract for the purchase of the gasoline from Nichimen, and also arranged for its transportation, Defendant did not demonstrate that Golden Gate Petroleum was mistakenly identified as the importer by the broker. The entry documents and the filed protest show that Golden Gate Petroleum acted as the importer for the San Francisco entry. *See Henry Mast Greenhouses*, 19 CIT at 1417 (noting that the name on the official documents was the telling evidence of the importer's identity). The court takes these official documents at their face value and finds that under the governing law, Defendant has been conclusively identified as the importer for purposes of duty liability in this case.

## 2. Assessment of Duties

Defendant in this action also seeks to challenge the validity of duties sought by the Government by arguing that the amount used to assess the duty was erroneous. Specifically, Defendant argues that the Government is attempting to collect duties on the merchandise that it knows was never imported at the Port of San Francisco and that, therefore, the liquidation is void *ab initio*. The Government counters that 19 U.S.C. § 1514(a) makes Customs' liquidation final on all persons unless protested and unless a civil action contesting the denial of the protest is commenced in the U.S. Court of International Trade.

In this case, Golden Gate Petroleum's broker mistakenly listed the entered value of the

cargo as $ 4,966,885.00 rather than $ 2,991,997.00. The Portland entry documents showed that

Golden Gate Petroleum paid the estimated duties on the portion of cargo whose value was then

included on the San Francisco Customs Form 7501, and Customs liquidated that entry without

any change in classification. Golden Gate Petroleum asserts that "this error should have been

apparent to both the Government and the broker from the documents already in their possession."

*See Aff. O'Keefe* ¶ 15. Defendant claims that the Government's case thus "includes the

liquidation of 4,233,802 gallons of gasoline in San Francisco that were, in fact, imported through

Portland, where duties on it were paid and liquidated." *Def.'s Opp'n Br.* 6. In support,

Defendant cites to the following Customs' regulation[6]:

> When any merchandise not corresponding with the description given in the
> invoice is found by the examining officer, duties shall be assessed on the
> merchandise actually found. If the discrepancy appears conclusively to be the
> result of a mistake and not of any intent to defraud, no proceedings for forfeiture
> shall be taken.

---

[6]The court notes that the cases cited by Defendant are inapposite and even adverse. *See Ashland Chem. Co. v. United States*, 7 CIT 362 (1984) (holding that Customs' appraisement of merchandise based on the unsupported addition of twenty percent to an invoice price was erroneous); *United States v. Woodward-Newhouse Co.*, 11 Ct. Cust. 284 (1922) (holding that where the entry stated correctly the number of bushels and the price per bushel, but erroneously extended the total value, "the entered value" for purposes of appraisement was the unit value and not the erroneous extension, and that it was the duty of the collector to multiply the number of bushels by the value per bushel and assess duty on the result); *United States v. Muller, Maclean & Co.*, 158 F. 405, 406 (1907) (holding, *inter alia*, that the Customs Administrative Act of 1890, requiring that duty not be assessed on less than the invoice value, "does not require the collector to accept a mistaken value given in a pro forma invoice, when he has before him the correct value given in a consular invoice."). Notably, in *Woodward-Newhouse*, the importer protested Customs' liquidation specifically pointing out that the value of the importation was a manifest clerical error. 11 Ct. Cust. at 285. Similarly, in *Muller*, the importer was appealing a decision of the Board of General Appraisers, a predecessor to this Court, with jurisdiction over protests. 158 F. at 406. These cases would have been relevant if Defendant availed itself of the administrative remedies under section 1514 or 1520(c).

19 C.F.R. § 152.3. This regulation was promulgated in connection with 19 U.S.C. § 1499, laying

out requirements for Customs' inspection, examination, and appraisal of merchandise at entry.

Congress has given Customs the authority to "fix the final appraisement of merchandise by

ascertaining or estimating the value . . . by all reasonable ways and means in [Customs'] power."

19 U.S.C. § 1500(a). While Customs is responsible for appraising merchandise, the pertinent

statute at the time provided:

> . . . decisions of the appropriate customs officer, including the legality of all
> orders and findings entering into the same, as to –
> (1) the appraised value of merchandise;
> (2) the classification and rate and amount of duties chargeable;
> . . .
> (5) the liquidation or reliquidation of an entry, or any modification thereof;
>  . . .
> *shall be final and conclusive* upon all persons (including the United States and
> any officer thereof) unless a protest is filed in accordance with this section, or
> unless a civil action contesting the denial of a protest, in whole or in part, is
> commenced in the United States Court of International Trade in accordance with
> chapter 169 of title 28 within the time prescribed by section 2636 of that title.

19 U.S.C. § 1514(a) (1982 & Supp. V. 1987) (emphasis added). At the time, the law also

provided that any "clerical error" could be brought to Customs' attention within one year after

the date of entry for reliquidation. *See* 19 U.S.C. § 1520(c)[7] (1982 & Supp. V. 1987), *repealed*

---

[7] Section 1520(c) provided:
(c) Reliquidation of entry or reconciliation
Notwithstanding a valid protest was not filed, the appropriate customs officer
may, in accordance with regulations prescribed by the Secretary, reliquidate an
entry or reconciliation to correct--
(1) *a clerical error*, mistake of fact, or other inadvertence not amounting to an
error in the construction of a law, adverse to the importer and manifest from the
record or established by documentary evidence, in any entry, liquidation, or other
customs transaction, when the error, mistake, or inadvertence is brought to the

*by* Miscellaneous Trade and Technical Corrections Act of 2004, Pub. L. No. 108-429, § 2105, 118 Stat. 2434 (2004).

The value error now challenged before the court was undoubtedly a protestable issue, and, alternatively, the importer could have also pursued relief through 19 U.S.C. § 1520(c). In its protest, however, Golden Gate Petroleum did not challenge the value error.[8] Nor did Defendant commence a timely action in this Court to perfect jurisdiction over its challenge. *See, e.g., United States v. T.J. Manalo, Inc.*, 26 CIT 1117, 1122, 240 F. Supp. 2d 1255, 1259-60 (2002) (stating that to challenge a denied protest in this Court, the importer must file a civil action within 180 days after the date of mailing of notice of denials of a protest, 28 U.S.C. § 2636(a)(1), and pay the outstanding duties and interest before the action is commenced pursuant to 28 U.S.C. § 2637(a)). Defendant's argument that the liquidation of the San Francisco entry was void *ab initio* is without merit because the liquidation was not illegal in this case: Customs' incorrect appraisement was a result of incorrect information provided by the importer on the entry documents. *Cf. Cherry Hill Textiles*, 112 F.3d at 1560 (holding, *inter alia*, that "[r]egardless of the accuracy or procedural correctness of the new liquidation, it would have no legal effect,

---

attention of the Customs Service within one year after the date of liquidation or exaction; or
(2) any assessment of duty on household or personal effects in respect of which an application for refund has been filed, with such employee as the
Secretary of the Treasury shall designate, within one year after the date of entry.

[8]In its motion for summary judgment, Golden Gate also challenged Customs' reclassification of the merchandise in the San Francisco entry under item 432.10, TSUS. For the same reasons, the court lacks jurisdiction to consider this issue as Golden Gate did not protest Customs' denial of its protest.

because it would be barred by principles of res judicata" after a deemed liquidation has become final). The result is unfortunate, but the law is unbending in this case as Defendant failed to challenge the liquidation based on a procedural or factual error in its protest or otherwise. The Federal Circuit has interpreted section 1514 as precluding the remedy sought by Defendant in this case:

> The issue of the effect of the "final and conclusive" clause is thus simply one of statutory construction. The language of section 1514, that a liquidation will be "final and conclusive" unless protested, is sufficiently broad that it indicates that Congress meant to foreclose unprotested issues from being raised in any context, not simply to impose a prerequisite to bringing suit. Moreover, we discern no compelling policy consideration counseling against giving the statutory language its naturally broad reading. To the contrary, under [the surety's] position importers or sureties could bypass the protest mechanism in any case in which an underpayment of duties is alleged, and then collaterally challenge the liquidation in the ensuing enforcement action. To give importers and sureties that option would create a gaping hole in the administrative exhaustion requirement of section 1514 and would be inconsistent with the underlying policy of section 1514, which is to channel challenges to liquidations through the protest mechanism in the first instance.

*Id.* at 1557 (internal citations omitted). The Federal Circuit's interpretation of section 1514 requires that the court uphold the protest requirement as applicable to this recovery of duties case. Because it did not protest the issue, Defendant does not have a cause of action before this court to correct the error in its entry documents.

## CONCLUSION

The Government in this case is entitled to summary judgment as a matter of law and Defendant is found liable for duties in the amount of $ 1,359,172.50. Regarding the Government's prayer for prejudgment interest from the fifteenth day after the entry's liquidation until the date of entry of judgment, presently the court is not inclined to order Golden Gate

Petroleum to pay such interest. *See United States v. Goodman*, 6 CIT 132, 140, 572 F. Supp.

1284, 1289 (1983) ("In the absence of a statutory provision to the contrary, an award of

prejudgment interest is a matter left to the sound discretion of the trial court, is governed by

consideration of equity and fairness, and is awarded to make the wronged party whole.").

Instead, the court orders the parties to consult, negotiate, and agree upon the amount of

prejudgment interest and to inform the court of such an agreement as directed in the

accompanying order. The parties will calculate prejudgment interest on the basis of the rate

provided in 28 U.S.C. § 2644 and in accordance with 26 U.S.C. § 6621. *See Goodman*, 6 CIT at

140. Finally, the Government is awarded post-judgment interest for the same equitable reasons[9]

at the rate provided by 28 U.S.C. § 1961.

February 21, 2006                                         /s/ Judith M. Barzilay

_____        _____

   New York, NY                                       Judith M. Barzilay, Judge

---

[9]It should be noted that although this Court has awarded post-judgment interest citing to 28 U.S.C. § 1961, *see, e.g.*, *Rico Imp. Co. v. United States*, 17 CIT 183, 184(1993), this section on its own terms applies to money judgments in civil cases recovered in district courts and therefore does not apply to this Court. *See* 28 U.S.C. § 1961(b)(4) ("This section shall not be construed to affect the interest on any judgment of any court not specified in this section."). While this court is not a "district court," it "possess[es] all the powers in law and equity of, or as conferred by statute upon, a district court of the United States." 28 U.S.C. § 1585; *see, e.g.*, *United States v. Hanover Ins. Co.*, 82 F.3d 1052, 1054 (Fed. Cir. 1996) (distinguishing this Court from district courts, citing 28 U.S.C. § 1585.). For the reasons stated in *Goodman*, the court finds the rate of interest specified in 28 U.S.C. § 1961 applicable in this case. *Goodman*, 6 CIT at 140-41.