# United States Court of Appeals for the Federal Circuit

2008-1195

UNITED STATES,

Plaintiff-Appellee,

v.

NATIONAL SEMICONDUCTOR CORPORATION,

Defendant-Appellant.

Stephen C. Tosini, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for plaintiff-appellee. With him on the brief were Gregory G. Katsas, Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director. Of counsel on the brief was Martha T. Wong, Assistant Chief Counsel, Office of the Chief Counsel, United States Customs and Border Protection, of New York, New York.

Robert Scott Whiteley, Whiteley & Cooper, of Oakland, California, argued for defendant-appellant. With him on the brief was Craig A. Mitchell.

John M. Peterson, Neville Peterson LLP, of New York, New York, for amicus curiae, The American Association of Exporters and Importers. With him on the brief were Maria E. Celis and Michael T. Cone.

Patrick C. Reed, Customs and International Trade Bar Association, of New York, New York, for amicus curiae, Customs and International Trade Bar Association.

Appealed from: United States Court of International Trade

Senior Judge R. Kenton Musgrave

# United States Court of Appeals for the Federal Circuit

2008-1195

UNITED STATES,

Plaintiff-Appellee,

v.

NATIONAL SEMICONDUCTOR CORPORATION,

Defendant-Appellant.

Appeal from the United States Court of International Trade in case no. 03-00223, Senior Judge R. Kenton Musgrave.

———————————————

DECIDED:  November 13, 2008

———————————————

Before RADER, SCHALL, and PROST, <u>Circuit Judges</u>.

PROST, <u>Circuit Judge</u>.

National Semiconductor Corporation ("NSC") appeals the December 12, 2007 decision of the United States Court of International Trade awarding the government penalties under 19 U.S.C. § 1592(c)(4)(B) and prejudgment interest thereon for NSC's underpayment of merchandise processing fees.  For the reasons set forth below, we affirm the Court of International Trade's penalty award but reverse the award of prejudgment interest.

## I.  BACKGROUND

Between 1993 and 2000, NSC erroneously underpaid merchandise processing fees owed on two groups of customs entries in violation of 19 U.S.C. § 1592(a).  Upon

discovery of its error, NSC voluntarily reported the underpayments to the United States Bureau of Customs and Border Protection ("Customs").

Subsection (c) of § 1592 provides culpability-based maximum penalties for violations of subsection (a). Parties who voluntarily disclose their violations, as NSC did in this case, are rewarded with lower maximums under subsection (c)(4). The maximum penalty for a voluntarily disclosed violation that occurred as a result of the violator's negligence or gross negligence "shall not exceed . . . the interest (computed from the date of liquidation at the prevailing rate of interest applied under section 6621 of Title 26) on the amount of lawful duties, taxes, and fees of which the United States is or may be deprived." 19 U.S.C. § 1592(c)(4)(B).

After accepting NSC's payment of the overdue merchandise processing fees, Customs determined that the violation was the result of negligence, which NSC does not contest. Customs then issued penalty notices for $250,840.21, the maximum allowed by § 1592(c)(4)(B). An action to collect the penalty followed.

On June 16, 2006, the Court of International Trade awarded the government the interest on NSC's underpayments from the dates of entry until the issuance of the pre-penalty notices under 19 U.S.C. § 1505(c) and a $10,000 penalty under § 1592(c)(4)(B). United States v. Nat'l Semiconductor Corp., Slip Op. 06-90, Court No. 03-00223, 2006 WL 1663279, at *6 (Ct. Int'l Trade June 16, 2006) ("NSC II"). In determining the penalty award under § 1592(c)(4)(B), the Court of International Trade considered the fourteen factors set forth in Complex Machine Works:

> (1) the defendant's good faith effort to comply with the statute; (2) the degree of culpability involved; (3) the defendant's history of previous violations; (4) the nature of the public interest in ensuring compliance with the applicable law; (5) the nature and circumstances of the violation; (6)

the gravity of the violation; (7) the defendant's ability to pay; (8) the appropriateness of the size of the penalty vis-a-vis the defendant's business and the effect of the penalty on the defendant's ability to continue doing business; (9) the economic benefit gained by the defendant through the violation; (10) whether the party sought to be protected by the statute is elsewhere adequately compensated for the harm; (11) the degree of harm to the public; (12) the value of vindicating agency authority; (13) whether the penalty shocks the conscience of the court; and (14) such other matters as justice may require.

Id. at *2-6; see also United States v. Complex Mach. Works Co., 83 F. Supp. 2d 1307, 1315 (Ct. Int'l Trade 1999). The Court of International Trade found that several factors favored mitigation, including NSC's good faith effort to comply, the degree of culpability, the nature of the public interest in ensuring compliance, and the nature and circumstances of the violation. NSC II, 2006 WL 1663279, at *2-4. However, it also found that other factors, such as NSC's history of violations, the harm to the public, and NSC's ability to pay and continue doing business, counseled against mitigation. Id. In light of its decision to award compensatory interest under § 1505(c), the court also determined that the ninth and tenth factors, the economic benefit gained through the violation and the adequacy of compensation to the government, favored mitigation of the § 1592(c)(4)(B) penalty. Id. at *4-6.

Following the Court of International Trade's denial of NSC's motion for reconsideration of the § 1505(c) award, NSC appealed. United States v. Nat'l Semiconductor Corp., 496 F.3d 1354 (Fed. Cir. 2007) ("NSC IV"). In NSC IV, we concluded that the court erred by awarding compensatory interest under § 1505(c) and vacated that part of the award. Id. at 1361. Because the court had "relied heavily" on the § 1505(c) award in its Complex Machine Works analysis, we remanded for a redetermination of the § 1592(c)(4)(B) penalty. Id.

On remand, the court determined that in the absence of the § 1505(c) award, the ninth and tenth factors, i.e., the economic benefit gained through the violation and the adequacy of compensation to the government, no longer supported mitigation. United States v. Nat'l Semiconductor Corp., Slip Op. 07-178, Court No. 03-00223, 2007 WL 4333280, at *1 (Ct. Int'l Trade Dec. 12, 2007) ("NSC V"). Accordingly, the court awarded a penalty of $250,840.21, the maximum available under § 1592(c)(4)(B), as well as prejudgment interest on that amount. Id. at *4.

NSC thereafter appealed the judgment. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

## II. DISCUSSION

"Where, as here, Congress has delegated to the judiciary discretion to determine the amount of civil penalties under a statute, we review the trial court's calculation of such penalties for abuse of discretion." United States v. Ford Motor Co., 463 F.3d 1267, 1274 (Fed. Cir. 2006). The Court of International Trade's award may be overturned only if it was "clearly unreasonable, arbitrary, or fanciful, based upon an erroneous construction of the law, based upon fact findings that are clearly erroneous, or if the record contains no evidence upon which the trial court could have rationally based its decision." Id. at 1285 (internal quotations omitted). An award of prejudgment interest is reviewed for abuse of discretion. United States v. Reul, 959 F.2d 1572, 1578 (Fed. Cir. 1992).

NSC argues on appeal that the Court of International Trade abused its discretion both by awarding the maximum penalty and by awarding prejudgment interest. We take each issue in turn.

A. Section 1592(c)(4)(B) Penalty

NSC alleges two errors in the Court of International Trade's award of the maximum penalty. First, NSC argues that the court's Complex Machine Works analysis was improper because it focused solely on compensating the government for the loss of interest resulting from the late payments. According to NSC, § 1592(c)(4) is aimed at deterring violations, not compensating the government. Therefore, NSC alleges that the court abused its discretion by giving conclusive weight to compensation and failing to properly consider the rest of the Complex Machine Works factors, several of which were determined to favor mitigation in NSC II. Second, NSC argues that the court erred by awarding the maximum penalty for a merely negligent violation. Specifically, NSC alleges that because § 1592(c)(4)(B) provides the same penalty scheme for violations resulting from negligence as those resulting from gross negligence, the court abused its discretion by failing to explain why it was not reserving the maximum for grossly negligent violations.

We disagree that the Court of International Trade focused singularly on the compensation factor when determining the penalty. In NSC II, the court conducted a detailed Complex Machine Works analysis and concluded that several factors, including NSC's history of violations, the degree of harm to the public, NSC's ability to pay, and the effect of the penalty on NSC's ability to continue operations, counseled against mitigation. NSC II, 2006 WL 1663279, at *2-4. On remand in NSC V, the Court of International Trade incorporated these findings by noting that our decision in NSC IV only "directly displaced" the adequacy of compensation factor. NSC V, 2007 WL 4333280, at *1. The court then reconsidered the compensation factor in the absence of

the § 1505(c) award and determined that it no longer favored mitigation. Id. The court continued by revisiting the ninth factor, i.e., the economic benefit gained through the violation, which it had noted in NSC II was closely related to the compensation factor. See NSC II, 2006 WL 1663279, at *4. The court found that without the § 1505(c) penalty, a penalty of less than the maximum allowed under § 1592(c)(4)(B) would reward NSC for its violation with "what amounts to, in effect, the interest on an unauthorized loan." NSC V, 2007 WL 4333280, at *1. Accordingly, we conclude that NSC's contention that the Court of International Trade's analysis was based solely on a single factor, compensation to the government, is simply incorrect. Reading NSC V in combination with NSC II, we find that the court permissibly determined that at least six Complex Machine Works factors disfavored mitigation.

We also find no abuse of discretion in the court's weighing of the factors to arrive at the maximum penalty. While NSC correctly argues that the court determined in NSC II that several factors favored mitigation, we conclude that the trial court's discretion permits more than simply counting the factors pointing in each direction. This is consistent with our approach in United States v. Ford Motor Co., where we rejected Ford's argument that three potentially mitigating factors precluded the imposition of the maximum penalty. 463 F.3d 1267, 1285 (Fed. Cir. 2006). In the present case, the Court of International Trade determined that NSC's prior compliance lapses, coupled with its ability to pay, the harm to the public and the treasury, and the need to promote deterrence by removing the economic benefit received as a result of the violations, justified the maximum penalty. With respect to NSC's complaint that the court increased the penalty award from $10,000 to $250,840.21 solely as a result of

reweighing two factors, we find nothing in the statute or Complex Machine Works that limits the court's discretion to give greater weight to factors that directly promote deterrence by ensuring that a violator does not retain the benefits accruing from its violation. We therefore conclude that the court's award was within the realm of its discretion.

NSC's second argument, that the statutory scheme requires the court to reserve the maximum penalty available under § 1592(c)(4)(B) for grossly negligent violations, is unpersuasive. Section 1592(c)(4)(B) provides the same maximum penalty for both negligent and grossly negligent violations, but does not provide additional guidance on how the court is to determine the penalty in a given case. See Complex Mach. Works, 83 F. Supp. 2d at 1312. We read this to indicate that Congress intended precisely what it said: the maximum penalty available is the same for both cases of negligence and cases of gross negligence. Had Congress sought to create a different maximum penalty for merely negligent violations, it could have done so expressly, as it did for violations resulting from fraud. Compare 19 U.S.C. § 1592(c)(4)(A), with § 1592(c)(4)(B).

Further, we note that of the fourteen Complex Machine Works factors, only four arguably depend on the violator's culpability. See Complex Mach. Works, 83 F. Supp. 2d at 1315. Consistent with our view that the court has broad discretion when conducting a Complex Machine Works analysis, we conclude that an award of the maximum penalty for a negligent violation is not an abuse of discretion.

### B. Prejudgment Interest

NSC alleges that the Court of International Trade abused its discretion by

awarding prejudgment interest on the penalty imposed under § 1592(c)(4)(B). NSC relies on Reul, 959 F.2d at 1578, to argue that prejudgment interest is unavailable for awards of punitive damages. According to NSC, § 1592(c)(4)(B) is clearly punitive because it speaks in terms of "penalties" and the legislative history and past cases indicate that the purpose is "to deter wrongdoing, not to provide the government with an additional source of revenue." Appellant's Br. 25. Additionally, NSC argues that prejudgment interest is not appropriate where the amount of damages is uncertain until the conclusion of the adjudication.

The government responds that § 1592 "has both penal and remedial aspects" and it was not an abuse of discretion for the court to award prejudgment interest to prevent the violation from enriching NSC at the public's expense. Appellee's Br. 21. Further, according to the government, the penalty amounts to the readily ascertainable value of the interest on the unlawfully withheld payments for the time during which they were withheld. Id.

Our precedent is clear that "[p]rejudgment interest may not be awarded on punitive damages," and, in our view, the plain language of the statute supports NSC's position that the damages authorized by § 1592(c) are punitive. See Reul, 959 F.2d at 1578; see also Underwater Devices Inc. v. Morrison-Knudsen Co., 717 F.2d 1380, 1389 (Fed. Cir. 1983), overruled on other grounds by In re Seagate Tech., LLC, 497 F.3d 1360 (Fed. Cir. 2007). Congress titled § 1592(c) "Maximum penalties" and characterized the award provided for by subsection (c)(4) as a maximum "monetary penalty." 19 U.S.C. § 1592(c) (emphases added); see United States v. Blum, 858 F.2d 1566, 1570 (Fed. Cir. 1988) (stating that "subsection (c) is a penalty provision").

Additionally, as the Complex Machine Works decision points out, Congress's decision to tie the maximum penalty to the culpability of the violator further suggests that "§ 1592 is driven primarily by considerations of deterrence rather than compensation." 83 F. Supp. 2d at 1315. Accordingly, we conclude that the damages awarded under § 1592(c) were intended to be primarily punitive.

Moreover, "[u]ncertainty in the amount of a claim is a ground for denying prejudgment interest." Van Vranken v. Atl. Richfield Co., 38 F.3d 1200, 1202 (Fed. Cir. 1994); see also E. Air Lines, Inc. v. Atl. Richfield Co., 712 F.2d 1402, 1410 (Temp. Emer. Ct. App. 1983) ("[I]t would be inequitable and unjust" to award prejudgment interest on a claim that was "the subject of great uncertainty."). We agree with NSC that the penalty here was uncertain prior to the final decision of the Court of International Trade. While the government may be correct in arguing that the amount of interest accrued on the unlawfully withheld payment is readily calculable, this argument is based on a mistaken assumption that this calculation yields the penalty. Customs may, as it did in this case, calculate the accrued interest and issue penalty notices for the full amount. However, those notices do not determine the penalty. Instead, the amount is decided de novo by the Court of International Trade following an analysis of the fourteen Complex Machine Works factors. See 19 U.S.C. § 1592(e)(1); see also Complex Mach. Works, 83 F. Supp. 2d at 1312-13. In determining the penalty, the Court of International Trade must "begin its reasoning on a clean slate" and "does not start from any presumption that . . . the penalty assessed or sought by the government has any special weight." United States v. Menard, Inc., 838 F. Supp. 615, 616 (Ct. Int'l Trade 1993), aff'd-in-part, vacated-in-part and remanded-in-part on other grounds, 64

F.3d 678 (Fed. Cir. 1995). Not only do past cases state that nothing requires the court to grant Customs's request for the maximum penalty, they also explain that the court should not presume that the maximum is warranted. See id.; see also United States v. Modes, Inc., 826 F. Supp. 504, 512 (Ct. Int'l Trade 1993) ("[T]he statute does not require the court to proceed from a maximum penalty and reduce that amount in the light of mitigating factors . . . ."). Indeed, at oral argument, government counsel acknowledged that an award of half of the maximum would likely survive appellate review because "the trial court has discretion to issue a penalty anywhere between zero and the maximum amount." Oral Arg. at 15:10-50, available at http://oralarguments.cafc.uscourts.gov/mp3/2008-1195.mp3. Considering the broad discretion allowed by the statute and the Complex Machine Works analysis, we cannot agree with the government that the amount of a penalty under § 1592(c)(4)(B) is readily ascertainable prior to the Court of International Trade's final decision.[1]

Because the damages provided by § 1592(c)(4)(B) are primarily punitive and remain uncertain until the final decision of the Court of International Trade, we conclude

---

[1] The government relied in its brief and at oral argument on several SEC cases that awarded prejudgment interest on the disgorgement of ill-gotten gains, notwithstanding that those gains were "not easy to ascertain." Appellee's Br. 23. We do not find these cases persuasive, however, because while the values of the ill-gotten gains may have been difficult to calculate, they were nevertheless determined according to objective standards. See, e.g., SEC v. First Pac. Bancorp, 142 F.3d 1186, 1192 n.6 (9th Cir. 1998) (affirming disgorgement of "a reasonable approximation of profits causally connected to the violation") (quotation marks omitted); SEC v. Patel, 61 F.3d 137, 139 (2d Cir. 1995) (rejecting defendant's argument that "the formula suggested by the SEC and applied by the district court [was] unreasonable"); SEC v. Commonwealth Chem. Sec., Inc., 574 F.2d 90, 102 (2d Cir. 1978) (rejecting defendant's argument that the SEC's charts, data, and mathematical errors resulted in an incorrect damages calculation). In contrast, the § 1592(c)(4)(B) analysis under Complex Machine Works requires the trial court to determine the penalty by subjectively weighing factors that are primarily unquantifiable.

that prejudgment interest on such an award is improper. Accordingly, we reverse the Court of International Trade's award of prejudgment interest.

## III. CONCLUSION

For the foregoing reasons, we affirm the Court of International Trade's penalty award and reverse the award of prejudgment interest.

## COSTS

Each party shall bear its own costs.

## <u>AFFIRMED-IN-PART AND REVERSED-IN-PART</u>