# United States Court of Appeals for the Federal Circuit

---

**UNITED STATES,**
*Plaintiff-Appellant*

**v.**

**AMERICAN HOME ASSURANCE COMPANY,**
*Defendant-Cross-Appellant*

---

2016-1088, 2016-1090

---

Appeals from the United States Court of International Trade in Nos. 1:09-cv-00403-LMG, 1:10-cv-00125-LMG, 1:10-cv-00175-LMG, 1:10-cv-00343-LMG, Judge Leo M. Gordon.

---

Decided: May 26, 2017

---

BEVERLY A. FARRELL, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York, NY, argued for plaintiff-appellant. Also represented by AMY M. RUBIN; BENJAMIN C. MIZER, JEANNE E. DAVIDSON, Washington, DC; BRANDON ROGERS, Office of Assistant Chief Counsel, United States Customs and Border Protection, Indianapolis, IN; PAULA S. SMITH, New York, NY.

HERBERT C. SHELLEY, Steptoe & Johnson, LLP, Washington, DC, argued for defendant-cross-appellant. Also represented by MARK FREDERICK HORNING.

EDWARD GRAHAM GALLAGHER, The Surety & Fidelity Association of America, Washington, DC, for amicus curiae The Surety & Fidelity Association of America.

––––––––––––––––

Before MOORE, TARANTO, and CHEN, *Circuit Judges.*

MOORE, *Circuit Judge.*

The government appeals from the United States Court of International Trade's ("Trade Court") judgment on the pleadings holding that the government is not entitled to non-statutory equitable interest for unpaid antidumping duties for imported goods. *United States v. Am. Home Assur. Co.*, 100 F. Supp. 3d 1364, 1373 (Ct. Int'l Trade 2015) ("*AHAC II*"). American Home Assurance Company ("AHAC") cross-appeals the Trade Court's decision to award the government interest on the unpaid duties under 19 U.S.C. §§ 580 and 1505(d). *Id.* at 1371. We affirm the Trade Court decision on all issues.

BACKGROUND

This appeal stems from four collection actions in which the government sought to recover unpaid antidumping duties from AHAC, a surety. AHAC secured three different importers' importation of preserved mushrooms and crawfish tail meat from China by issuing numerous single transaction and continuous entry bonds in 2001 and 2002. The issued bonds obligated the importers and AHAC to pay, up to the face amounts of the bonds, "any duty, tax or charge and compliance with law or regulations" resulting from covered activities. Customs liquidated the entries secured by the bonds and assessed antidumping duties on the merchandise. Each importer failed to pay the duties owed. The parties do not dispute

that AHAC is liable for the principal amounts of anti-dumping duties owed on the bonds.

After liquidation, Customs started charging statutory post-liquidation interest on the unpaid duties of two of the collections that did not exceed the face amount of the bonds pursuant to 19 U.S.C. § 1505(d) ("§ 1505(d) interest"). From 2003 to 2009, Customs issued multiple demands notifying AHAC of the government's intent to seek § 1505(d) interest. AHAC protested the government demands and Customs denied the protest. AHAC could have challenged Customs' denial at the Trade Court under 28 U.S.C. § 1581(a), but elected not to do so. In 2009, the government commenced four suits at the Trade Court for the collection of unpaid duties and interest, which the Trade Court consolidated. After discovery, the parties cross-moved for summary judgment. Relevant to this appeal, the parties disputed the application of equitable prejudgment interest, § 1505(d) interest, and 6% statutory prejudgment interest under 19 U.S.C. § 580 ("§ 580 interest").

The Trade Court granted in part and denied in part both the government's and AHAC's motions. It ordered AHAC to pay § 1505(d) interest up to the face amounts of the bonds. It held that § 1505(d) interest involves "charges or exactions of whatever character" under 19 U.S.C. § 1514(a)(3) and that the statute does not contain an exception for charges or exactions arising after liquidation. It held that the bonds statutorily and contractually serve to secure the payment of duties and any interest—they do not distinguish between pre- and post-liquidation interest. It held that because the § 1505(d) interest determination is "final and conclusive" under § 1514(a) and AHAC failed to contest its denied protest, AHAC was precluded from asserting any defenses regarding its liability for § 1505(d) interest.

The Trade Court also held AHAC liable for § 580 interest, which is 6% statutory prejudgment interest. The Trade Court declined to award equitable prejudgment interest because the 6% rate of the § 580 interest "far exceeds the applicable rates at which the Government would receive equitable interest" and awarding equitable prejudgment interest in these circumstances would overcompensate the government. The government appeals the Trade Court's denial of non-statutory equitable interest, and AHAC cross-appeals the Trade Court's award of § 580 and § 1505(d) interest to the government. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## DISCUSSION

We review the Trade Court's grant or denial of summary judgment for correctness as a matter of law and we decide de novo "the proper interpretation of the governing statute and regulations as well as whether genuine issues of material fact exist." *United States v. Am. Home Assur. Co.*, 789 F.3d 1313, 1319 (Fed. Cir. 2015) ("*AHAC I*"). We review the Trade Court's determination not to award equitable prejudgment interest for abuse of discretion. *Princess Cruises, Inc. v. United States*, 397 F.3d 1358, 1367 (Fed. Cir. 2005).

### A. Equitable Prejudgment Interest

The government argues the Trade Court erred in denying the government equitable prejudgment interest because its decision was predicated on the assumption that § 580 interest is compensatory. It argues the purpose of equitable prejudgment interest is to compensate the government for the time value of money, whereas the purpose of § 580 interest is to penalize a noncompliant party. We do not agree with the government's characterization. While we agree that § 580 interest and equitable prejudgment interest are not mutually exclusive, the mere availability of dual sources of prejudgment interest does not mandate their application in every case. The

Trade Court retains broad discretion to apply equitable prejudgment interest in accordance with the facts of each case.

Equitable prejudgment interest "serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." *Princess Cruises*, 397 F.3d at 1367 (quoting *West Virginia v. United States*, 479 U.S. 305, 310 n.2 (1987)). No statute or regulation explicitly authorizes equitable prejudgment interest; its award is governed by traditional judge-made principles. *Id.* Factors a court may consider in awarding equitable prejudgment interest may include the degree of wrongdoing on the part of the defendant, the availability of alternative investment opportunities to the plaintiff, whether the plaintiff delayed bringing the action, and other fundamental considerations of fairness. *United States v. Great Am. Ins. Co. of N.Y.*, 738 F.3d 1320, 1326 (Fed. Cir. 2013).

In its entirety, 19 U.S.C § 580 states: "Upon all bonds, on which suits are brought for the recovery of duties, interest shall be allowed, at the rate of 6 per centum a year, from the time when said bonds became due." Section 580 applies to bonds securing the payment of antidumping duties when the government sues for payment under those bonds. *AHAC I*, 789 F.3d at 1324–28.

Generally, equitable remedies are unavailable when a party has an adequate statutory remedy. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992); *accord West Virginia*, 479 U.S. at 308–09 ("In the absence of an applicable federal statute, it is for the federal courts to determine, according to their own criteria, the appropriate measure of damage, expressed in terms of interest, for nonpayment of the amount found to be due."). AHAC argues that to allow both statutory prejudgment interest at 6% and equitable prejudgment interest would amount

to a windfall to the government and permit double recovery or more. In the current environment where interest rates are less than 6%, the statutory rate chosen by Congress under § 580 amounts to full recovery plus some. This, of course, is Congress' choice and we are bound by the statute.

The availability of statutory interest would normally render equitable interest unavailable. Here, however, Congress expressly indicated the availability of both statutory and equitable prejudgment interest when it enacted the Trade Facilitation and Trade Enforcement Act of 2015 ("TFTEA"). *See* Pub. L. No. 114–125, 130 Stat. 122. TFTEA provided authority for the government to deposit interest earned on antidumping duties into the special account created by the Continued Dumping and Subsidy Offset Act. 19 U.S.C. § 4401. Congress recognized that interest earned on antidumping duties includes "[e]quitable interest under common law *and* interest under section 580 of this title awarded by a court against a surety under its bond for late payment of antidumping duties." *Id.* § 4401(c)(2)(C) (emphasis added). The plain meaning of this statutory language indicates that Congress recognized that a court may award *both* equitable and § 580 interest. *See also AHAC I*, 789 F.3d at 1330.

That the Trade Court *may*, in its discretion, award dual sources of prejudgment interest does not mean that the Trade Court *must* award dual sources of prejudgment interest when the government brings an action to recover duties. The fact that the plain language of § 580 covers bonds securing the payment of antidumping duties does not transform the statute into one that is punitive in nature. In fact, the statute expressly designates the § 580 monies as "interest." We conclude that the Trade Court retains broad discretion to apply nonstatutory prejudgment interest according to traditional equitable principles, which is exactly what it did in this case.

The Trade Court did not abuse its discretion in concluding that equitable prejudgment interest is unnecessary. It recognized our decision in *AHAC I* and noted that an award under § 580 may "alter[] the landscape" with respect to equitable prejudgment relief. *AHAC II*, 100 F. Supp. 3d at 1371 (quoting *AHAC I*, 789 F.3d at 1330). The Trade Court then reviewed various equitable factors, noting that the government did not unreasonably delay bringing this action, although its "timing may not have been optimal," and "AHAC has never paid the outstanding duties, with one exception, despite Customs' numerous requests." *Id.* at 1372–73. Ultimately, the Trade Court determined that "[§] 580 interest more than fairly compensates the Government for the time value of the unpaid duties" because the 6% rate under § 580 "far exceeds the applicable rates at which the Government would receive equitable interest." *Id.* at 1373. While the government correctly points out that the Trade Court stated that the factors in this case "may favor an award of equitable interest," *id.*, the court has discretion to weigh the factors and is not required to come out in any particular way. *See United States v. Nat'l Semiconductor Corp.*, 547 F.3d 1364, 1368–69 (Fed. Cir. 2008) ("[T]he trial court's discretion permits more than simply counting the factors pointing in each direction."). We see no abuse of discretion in its weighing of relevant factors and thus affirm the Trade Court's decision not to award equitable prejudgment interest.

## B. § 580 Interest

AHAC argues the Trade Court erred by awarding § 580 interest on § 1505(d) interest and by calculating § 580 interest from the date of Customs' first demand, rather than the date of Customs' first demand after denying AHAC's protests. AHAC also argues that the Trade Court abused its discretion by declining to permit AHAC to make a deposit in an interest-bearing account to

mitigate the running of § 580 interest. We affirm the Trade Court on all counts.

Customs assesses any duties and fees due for imported merchandise at the time of liquidation, and payment is due "30 days after issuance of the bill for such payment." 19 U.S.C. § 1505(b). If the bill is not paid within the 30-day period, "any unpaid balance shall be considered delinquent and bear interest by 30-day periods, at a rate determined by the Secretary, from the date of liquidation . . . until the full balance is paid." *Id.* § 1505(d). Because the statute, titled "Payment of Duties and Fees," is directed to the duties and fees due on the merchandise under bond, *id.* § 1505(a), the sum of any § 1505(d) interest and any other duties and fees may not exceed the face amount of the subject bond. In other words, the government is entitled to post-liquidation § 1505(d) interest, which may accrue up to the face amount of the bond, starting thirty days after Customs issues the first post-liquidation bill and ending when the full balance is paid (up to the bond amount). *Accord United States v. Am. Home Assur. Co.*, 113 F. Supp. 3d 1297, 1310–13 (Ct. Int'l Trade 2015) (holding surety liable for § 1505(d) interest up to the face amount of the bond).

The plain terms of § 580 dictate that § 580 interest may be assessed on the entire bond amount, including any applicable § 1505(d) interest. The statute states that interest shall be allowed "upon all bonds" on which the government must bring suit to recover duties. 19 U.S.C. § 580. As we previously recognized, the word "duties" does not modify "bonds"—the statute calls for interest on "*all* bonds" and does not discriminate between duties, fees, or interest assessed under the bond. *AHAC I*, 789 F.3d at 1325.

19 U.S.C. § 4401 further reinforces that Congress intended that § 580 apply to all duties, fees, and interest assessed under the bond. In describing the various types

of interest earned on antidumping duties, Congress identified:

> Equitable interest under common law and *interest under section 580* of this title awarded by a court against a surety under its bond for late payment of antidumping duties, countervailing duties, *or interest* [accrued under section 1505(d) of this title].

19 U.S.C. § 4401(c)(2)(C) (emphases added). This statute expressly anticipates that both equitable interest and § 580 interest can be earned on, inter alia, antidumping duties and § 1505(d) interest. We hold that § 580 interest may be assessed on the bond up to its face value, including applicable § 1505(d) interest.

We are not persuaded by AHAC's argument that the Trade Court erred in awarding § 580 interest from the date of the government's first formal demand for payment because § 1505(d) interest did not become "legally fixed" under 19 C.F.R. § 113.62(a)(1)(ii) until Customs denied AHAC's protest regarding the § 1505(d) interest. The plain language of § 580 dictates that § 580 interest is calculated "from the time when said bonds became due." This language is clear and unambiguous. Since "no interest runs against a surety on the principal amount of a bond unless requisite notice and demand for payment is first made," the time when the bonds became due can be no earlier than the government's first formal demand for payment. *United States v. Reul*, 959 F.2d 1572, 1581 (Fed. Cir. 1992).

The language of § 113.62(a)(1)(ii) is not to the contrary. Section 113.62 sets forth the basic conditions for a bond for importation and entry. It does not dictate the timing when interest must run. It does not mention § 580 or § 1505, nor does it use the word "interest." And in context, the regulation states that the surety must "*[p]ay, as demanded by CBP, all additional duties, taxes, and*

charges subsequently found due, legally fixed, and imposed on any entry secured by this bond." 19 C.F.R. § 113.62(a)(1)(ii) (emphasis added). Even if we interpret "legally fixed" to require that AHAC had an opportunity to protest the charge, this regulation would then merely require AHAC to *pay* the charges after its protest was denied—the regulation does not speak to how to *calculate* interest charges.

The language of § 580 is clear. The Trade Court did not err in holding that § 580 interest runs from the date of the government's first formal demand for payment.

AHAC also argues that the Trade Court abused its discretion by declining to permit AHAC to make a deposit in an interest-bearing account to mitigate the running of § 580 interest and the award of § 580 interest should be reduced by the amount that would have been earned in such an account. AHAC disagrees with the Trade Court's exercise of its discretion. In denying AHAC's motion, the Trade Court articulated a thorough and reasoned analysis explaining its denial. *See United States v. Am. Home Assur. Co.*, 6 F. Supp. 3d 1371, 1374 (Ct. Int'l Trade 2014). Nothing more is required. The Trade Court did not abuse its discretion when it denied AHAC's motion.

## C. § 1505(d) Interest

AHAC argues the Trade Court erred in holding that AHAC waived its right to contest the award of § 1505(d) interest because 19 U.S.C. § 1514 applies only to the importer, not the surety, during liquidation. We do not agree. We hold that AHAC waived its opportunity to contest the application of § 1505(d) interest when it failed to contest Custom's denial of its protest and pay the duties and fees owed.

All reviewable determinations and decisions by Customs relating to liquidation, including "all charges or exactions of whatever character within the jurisdiction of

the Secretary of the Treasury," are final and conclusive unless a protest is filed "or unless a civil action contesting the denial of a protest" is filed at the Trade Court. 19 U.S.C. § 1514(a)–(b). Once final and conclusive, Customs' decisions are foreclosed from challenge by any party in a collection action. *United States v. Cherry Hill Textiles, Inc.*, 112 F.3d 1550, 1557 (Fed. Cir. 1997) ("The language of section 1514, that a liquidation will be 'final and conclusive' unless protested, is sufficiently broad that it indicates that Congress meant to foreclose unprotested issues from being raised in any context, not simply to impose a prerequisite to bringing suit. Moreover, we discern no compelling policy consideration counseling against giving the statutory language its naturally broad reading.").

Challenges to the validity of a liquidation and any findings related to liquidation are subject to § 1514. *St. Paul Fire & Marine Ins. Co. v. United States*, 959 F.2d 960, 963 (Fed. Cir. 1992) ("[A] surety may protest the government's demand for payment on its bond provided it files such protest within 90 days of the demand. 19 U.S.C. § 1514(c)."); *Cherry Hill*, 112 F.3d at 1557 ("[T]he issue of the correctness and validity of the liquidation is 'final and conclusive' for purposes of the collection action when the liquidation has not been protested in accordance with the provisions of section 1514."); *Volkswagen of Am., Inc. v. United States*, 532 F.3d 1365, 1370 (Fed. Cir. 2008) ("[T]he language of § 1514 establishes liquidation as a final challengeable event in Customs' appraisal process. Findings related to liquidation—including valuation— merge with the liquidation."). The finality of liquidation under § 1514 is applicable to importer and surety alike. *See* 19 C.F.R. § 113.62(a)(1)(ii) (surety must agree to joint and several liability with importer to "[p]ay, as demanded by CBP, all additional duties, taxes, and charges subsequently found due, legally fixed, and imposed on any entry secured by this bond"); *United States v. Utex Int'l*

*Inc.*, 857 F.2d 1408, 1412 (Fed. Cir. 1988) ("The importer, the surety, and the government are bound by and have the right to rely on the finality of liquidation."); *Cherry Hill*, 112 F.3d at 1556 (stating that our case law, which carves out some exceptions, does not stand for the "sweeping proposition that a surety is not bound by unprotested liquidations").

There is no question that § 1505(d) interest is a "charge[] or exaction[] of whatever character within the jurisdiction of the Secretary of the Treasury." 19 U.S.C. § 1514(a)(3); *accord N. Z. Lamb Co. v. United States*, 40 F.3d 377, 382 (Fed. Cir. 1994) ("We start from the premise that interest on the underpayment of duties is a charge 'within the jurisdiction of the Secretary of the Treasury,' 19 U.S.C. § 1514(a)(3)."). The statutory price for delinquency of payment of the duties and fees determined at liquidation is specified by § 1505(d). Section 1505(d) interest is a straightforward sum that is calculated in the event that the duties and fees at liquidation are not paid in a timely manner. That § 1505(d) interest must inherently be assessed after liquidation (since the surety and importer must have failed to pay the duties and fees assessed at liquidation) changes nothing about the nature of the charge. And as the Trade Court correctly recognized, § 1514 does not distinguish between charges and exactions arising after liquidation or on particular kinds of duties.

AHAC points to no authority that justifies creating a distinction between an importer's and a surety's obligation to protest Customs' notification that it was charging § 1505(d) interest. We have acknowledged a surety may retain the right to assert certain claims or defenses in some situations not applicable here. *See Cherry Hill*, 112 F.3d at 1560 (where liquidation is deemed final as a matter of law and the government later tries to liquidate the entry anew, the surety is not precluded from using the deemed liquidation as a shield against an enforcement

action); *St. Paul Fire*, 959 F.2d at 963–64 (surety was not barred under § 1514 from raising claims where it was discovered, after the protest period, that the importer was engaged in fraudulent conduct); *Utex*, 857 F.2d at 1413–14 (surety was not barred under § 1514 from raising defenses for liability for failure to export merchandise as demanded by Customs four years *after* liquidation).

Once Customs notified AHAC that it was denying its protest, the contest period to commence an action at the Trade Court began running. 28 U.S.C. §§ 1581(a), 2636(a). AHAC chose not to exercise its right to contest Customs' decision to deny the protest and Customs' decision thereby became final and conclusive under 19 U.S.C. § 1514(a). We hold that pursuant to § 1514(a), AHAC waived the right to appeal the application of § 1505(d) interest by failing to challenge its liability below.

## CONCLUSION

For the foregoing reasons, we affirm the Trade Court's judgment. The Trade Court did not abuse its discretion in declining to award the government equitable prejudgment interest on top of § 580 interest or in declining to permit AHAC to make a deposit in an interest-bearing account. We affirm the Trade Court's award of § 1505(d) interest up to the face amount of the bonds, beginning from the date of Customs' first demand, and the award of § 580 interest. Finally, we affirm the Trade Court's determination that AHAC is precluded from asserting defenses to its liability for § 1505(d) interest because it failed to contest the liability at the Trade Court during the statutory protest period.

## **AFFIRMED**

### COSTS

No costs.